*May* 17th.          TEMPERANCE GREEN AND OTHERS *against* JOSEPH
                              WINTER.

Where G., being indebted to H., conveyed to W. certain bonds and mortgages, and part of the lands sold under the mortgages, and purchased in by W., *in trust*, to sell the same as H. might direct ; and " upon payment of such sums as might be justly due to W. in relation to the execution of his trust, or that he might advance or become liable for," to convey to H. the lands and proceeds thereof, and to assign over to H. the bonds and mortgages, taken by W., and which might remain in his hands, "after his said advances and responsibilities were secured and satisfied;" H. afterwards assigned over all his interest in the trust estate to his sister T., the wife of G., to her sepa-

rate use, for life, with power to dispose of the same to, and among her children :

It was held, that payments made by the trustee to G., the husband of T., the *cestuy que trust*, were not chargeable on the trust fund ; nor, if authorized by T., could the trustee be allowed the benefit of them, in his account, further than what was actually necessary for the support of herself and children ; unless it appeared that the husband had applied the payments to the specific purposes of the trust.

A trustee cannot act for his own benefit in a contract on the subject of the trust.

So, a trustee, who purchases a mortgage or a judgment, which was a lien on the trust estate, at a discount, is not allowed to turn such purchase to his own advantage.

A trustee cannot demand a compensation for services, beyond what is founded on the positive agreement of the parties. And where a trustee, who was a counsellor at law, was to be allowed for " all his advances and responsibilities ;" it was held, that though he was entitled to a liberal indemnity for his expenses and responsibilities incurred in the due and faithful execution of his trust, yet he was not entitled to a counsel fee, as a general retainer, nor for any thing more than what is understood, in the language of a court of equity, to be "just allowances."

A trustee is not entitled to *commissions* on sales of the trust property, or on moneys received and paid by him, or any compensation for his care and pains in executing the trust ; but he is entitled to an allowance *per diem* for his *time*, and *expenses* of travel, &c.

Nor will a trustee be allowed for expenditures for *improvements* of the trust estate, though made *bona fide*, as in building houses and mills, clearing land, making roads, &c., such expenses not being within the purview of the trust, which was to sell land, to raise money, to pay off encumbrances, &c., and to restore the residue. He is entitled only to necessary expenditures, as for repairs, &c.

Nor will the purchase and sale of *stock, hay, grain,* and *farming utensils,* &c., be taken into the account of the trust estate.

Where a trustee, though called on for that purpose, refused to exhibit to referees appointed by the court, by consent of parties, an account of the rents and profits of certain parts of the trust estate, he was held chargeable with what, in the opinion of the referees, such parts of the estate would reasonably have produced.

Where a trustee agreed to purchase and pay for a farm, at the request and for the use of the *cestuy que trust*, out of the proceeds of the trust estate ; and he purchased the farm, for which he gave his bond, secured by a mortgage on the premises ; but when the bond became due, he refused to pay it, but procured a foreclosure and sale of the farm, by the mortgagee, at a loss of above 4,000 dollars, the trustee was held chargeable for this loss, and all the costs of the suits.

*WILLIAM GREEN,* one of the plaintiffs, and the husband of *Temperance Green,* in 1792, purchased certain lands

1814.

GREEN
v.
WINTER.

in *Cosby's* manor, and in the patent of *Springfield*, under a contract of purchase, made in 1791, from the heirs of *John Morin Scott;* and, in 1794, he purchased three tracts of land in the *Oriskany* patent, of the trustees of Governor *Livingston*, deceased. A considerable part of the purchase money was paid by him; and, to secure the residue, he gave mortgages on the property. In 1796, and 1798, he sold the whole of the lands so purchased, to persons who gave their notes, and bonds and mortgages, for the purchase money; but they, afterwards, became insolvent, and *Green*, in consequence, became embarrassed, and was imprisoned for debt.

*Patrick Heatley*, of *London*, *Great Britain*, the brother of Mrs. *Green*, advanced, at different times, various sums of money for the support of herself and family; to secure which, as well as such further sums as he might afterwards advance, *William Green*, in *August*, 1803, conveyed to the defendant the bonds, notes, and mortgages, of the purchasers of the lands above mentioned; and the defendant executed a declaration of trust, that he held the same in trust, to collect and receive the proceeds, and to pay *Patrick Heatley* all moneys then due, or that might hereafter become due to him, from *William Green*, in any manner whatever; and the balance in trust for *Green*. *Heatley*, afterwards, advanced a sum to pay off the mortgage to the trustees of Governor *Livingston*.

*Winter* proceeded to foreclose the mortgages on the lands, which were sold, except two lots, by the master, under decrees for that purpose, subject to prior encumbrances, to the defendant, *Joseph Winter*, for 7,000 dollars, in trust for *Heatley*, to whom there were then due above 10,000 dollars.

On the 13th of *August*, 1805, the defendant executed a deed of trust, reciting, among other things, that *William Green* being indebted to *Patrick Heatley*, of *London*, had given him a lien on lands purchased of the executors of

*Scott,* and had assigned to the defendant, in trust, to secure *Heatley,* certain mortgages on land purchased by *Green* from the representatives of *Livingston,* &c., and part of which lands had been sold under those mortgages, and purchased by the defendant, for the benefit of *Heatley ;* and the defendant, therefore, covenanted and agreed with *Heatley,* that he, and his heirs, would stand seised of those lands, *in trust,* to sell the same, in such small parcels, and for such prices, and on such terms of credit, as should be most beneficial to *Heatley,* or as he should in writing direct ; provided, that it should be lawful for the defendant, with the approbation of *C. S., N. P.,* and *R. M.,* or any two of them, or the survivors, if given in writing, to sell so much of the said lands as might be necessary " to reimburse himself of all such moneys as he might advance, pay, or expend, in execution of the trust ;" or to discharge the notes, &c., which he might give to discharge the prior mortgages of *Green :* the defendant, also, further covenanted, that, " upon payment of such sums of money as might justly be due to him, in relation to the execution of his trust, or that he might advance or become liable for," he would, upon request of *Heatly,* &c., convey to *Heatley* the lands, or the proceeds thereof, after deducting as aforesaid ; and that he would also assign to *Heatley* the bonds and securities taken by him, the defendant, and which might remain " after his said advances and responsibilities were secured and satisfied." The deed of trust further provided, in case any dissatisfaction should arise as to any matter or thing relating to the trust, the same should be submitted to the determination of *C. S., N. P.,* and *R. M.,* whose decision, or that of any two of them, or of the survivor of them, should be conclusive ; and that, in case the defendant should die, or becoming incapable of executing the trusts, the property should vest in *R. P.,* to the same uses, who should, out of the lands, or the proceeds thereof, pay to the defendant " all his real *bona fide* charges, advances, and responsibilities."

1814.

GREEN
v.
WINTER.

*Heatley,* afterwards, on the 8th of *August,* 1806, assigned over all his interest in the trust, to his sister, Mrs. *Green,* for her life, and to her separate use, independent of her husband, and with power to dispose of the same among the children ; and from that time Mrs. *Green* has been the *cestuy que trust.*

It appeared, also, that the defendant executed another declaration of trust, stating that the purchase of lot No. 74, in *Cosby's Manor,* and the *Oriskany* farm, under a decree, was to be considered as made and held under the above trust.

In *June,* 1809, the plaintiffs filed their bill against the defendant, and supplemental and amended bills, in *October* and *December* following, stating, among many other things, the facts above mentioned, and charging the defendant with various breaches of trusts, &c.   To these bills answers were put in by the defendant.

On the 8th of *June,* 1811, by consent of the parties, an order of *reference* was made in the cause, to *Morris S. Miller, Abraham Varick,* jun., and *Charles Broadhead,* or any two of them, to take an account of the receipts and payments, and responsibilities of the defendant, concerning the matters in issue, making him all just allowances ; and that, in taking such account, the referees were to proceed on the same principles and evidence as would be proper before a master ; and they were directed to state, specially, all matters of fact.

The referees met in *August, October,* and *December,* 1811, having adjourned twice, at the request of the defendant, to give him an opportunity to produce his accounts, vouchers, and evidence.   Having completed their report, about the 1st of *March,* 1812, the referees caused a copy to be delivered to the counsel of each of the parties, and appointed a day for the parties to appear before them, to hear their report, and make their objections.   At the day appointed, on the request of the defendant's counsel, the referees

adjourned to a further day, to give the defendant time to make his objections. At such further day, the counsel for the plaintiffs appeared, and stated various objections to the report; but no person appeared on the part of the defendant.

The report of the referees was signed by them the 21st of *April*, 1812, and filed in court.

This report, with the documents accompanying it, was very voluminous. Such parts as are material to the understanding of the decision of the court, are as follows :

That on the 1st of *January*, 1811, the defendant had received on the trust estate, viz.

| | |
|---|---:|
| On sales of land, | $25,739 73 |
| On sales which failed, | 460 |
| On bills of exchange, | 3,277 60 |
| Of *Christopher Roberts*, and others, | 165 55 |
| On rents, | 2,311 56 |
| On stock, hay, and grain, &c. | 1,789 |
| | $33,743 44 |
| Interest on the above sums, | 10,239 55 |
| | $43,982 99 |

And that the defendant had entitled himself to the following credits, viz.

| | |
|---|---:|
| On the real estate, | $14,336 80 |
| Paid to *Temperance Green*, &c. | 1,255 47 |
| For surveys, | 167 75 |
| For taxes, | 177 58 |
| For law charges, | 4,195 11 |
| Costs relative to the Gore, | 170 11 |
| Costs in suits against *Bennet*, &c. | 520 14 |
| For commissions, | 3,516 37 |
| For time and expenses, | 1,589 52 |
| For improvements, | 6,018 22 |
| For stock, hay, grain, &c. | 2,885 50 |

On *Bayside Farm*,                                    1,699 88

$36,532 67

Interest on the above sums,                                9,406 56

$45,939 23

The referees rejected, from the account of the defendant, various sums for *commissions, brokerage, interest, compensations for time, travelling expenses, losses, postages, clerk hire, law charges,* which, with the interest thereon, amounted to about 19,000 dollars.

And they allowed him, under the head of *commissions,* 10 *per cent.* on sales of land ; 7 *per cent.* on moneys received on contracts which failed ; and 2 1-2 *per cent.* on the amount received on bills of exchange.

Among the *law charges* allowed by them, was 500 dollars, as a general retainer ; beside numerous particular fees, and bills of costs.

The charge allowed, for costs of suits against *Bennet* and others, were on judgments, as in case of nonsuit, for not bringing on the causes to trial, pursuant to notice, at the *Otsego* circuit, in *June,* 1809 ; the defendant not having attended the circuit, the causes went off.

Both parties being dissatisfied with the report, exhibited and filed their exceptions in *August,* 1812.

The *exceptions,* on the part of the plaintiffs, were *eight* in number ; and in substance as follows :

1. That the general retainer of 500 dollars as counsel ; the costs in the suits against *Bennet* and others, and sundry bills of costs, fees, &c., amounting in the whole to 18,668 dollars and 5 cents, ought not to have been allowed.

2. That none of the charges for *commissions* ought to have been allowed, nor his time and travelling expenses, except for *actual* disbursements and expenses.

3. That no part of the sum allowed for improvements, building mills, houses, making roads, &c., ought to have been

allowed, except, perhaps, the costs of necessary repairs, amounting to about 700 dollars.

4. The allowance for stock, hay, grain, &c. ought not to have been made, as those charges could not concern the trust estate.

5. That the defendant having refused to exhibit, though required to do so, to the referees, an account of the rents, profits, and leases, he ought to have been charged with such rents and profits as they would have reasonably produced without neglect or wilful default, which would have been seven or eight hundred dollars ; and, also, that he ought to be charged with waste and destruction of wood and timber, to the amount of 1,000 dollars.

6. That as the defendant had caused the *Bayside Farm*, in *Queen's* county, which had been purchased for the residence of Mrs. *Green* and her family, out of the proceeds of the trust estate, and conveyed to *P. Heatley*, subject to a mortgage of the purchase money, to be sold under the mortgage, and thereby broke up the establishment of Mrs. *Green* and her family, which had occasioned a loss of more than 4,000 dollars ; and had purchased a judgment against *William Green*, on which he took out an execution, and caused it to be levied on the furniture and other personal property on the farm, and sold, and which he had before purchased as trustee for Mrs. *Green*, and been allowed for, he ought to have been charged with this *stock*, &c. and the *costs*, in addition to the *loss* produced by his causing the sale of the farm, &c.

7. and 8th exceptions not being particularly noticed in the opinion of the Chancellor, it is unnecessary to state them.

The defendant made *thirty-seven* exceptions to the report; but as most of them related to charges, resting wholly on matters of fact and evidence, it is necessary, here, to state only the two following :

1. Because the referees rejected about 19,000 dollars, including interest, from the sums charged in the defendant's

account, and which were duly proved, and did not state the matters of fact specially relating thereto.

2. Because the referees have reported concerning a mortgage given by *William Green*, and his wife, to *Isaac Ogden* and *Philip I. Hoffman*, for securing two bonds; when, at the time of the reference, the defendant had no interest in them, and he so informed the referees, and he made no charge against the trust estate on account of the mortgage or bonds; but that if it was a proper subject for the referees to report on, they have not credited the amount paid for the mortgage, by about 350 dollars.

After a postponement of a hearing of the argument on the exceptions, on the petition of the defendant, they were again set down for argument in *January*, in 1813, when the defendant petitioned to have the report referred back to the same referees on the exceptions, and the petition was postponed for the next term. He then applied for a further postponement of the argument and decision on the petition and exceptions, which being denied, he declined arguing the exceptions; and on the 20th of *January*, 1813, the late Chancellor made a decretal order, overruling the defendant's exceptions, and allowing those of the plaintiffs, and confirming the report in other respects. On the 22d of *January*, an injunction was issued to restrain the appellant from intermeddling with the trust estates.

Pursuant to the decretal order of the 20th of *January*, 1813, an account was taken before a master, before whom the plaintiffs appeared, but the defendant neglected to attend; and the master, on the 8th of *February*, reported the sum of 20,510 dollars and 1 cent due to the plaintiffs.

In *April*, 1813, the defendant gave notice of a petition for a hearing on his exceptions, which had been overruled, and a rehearing on his petition for a re-reference of the report to the same referees. In *August*, 1813, the Chancellor ordered a hearing, in the nature of a rehearing of the exceptions and the petition, on payment of certain costs.

On application of the defendant, the hearing was put off; and in *April*, 1814, the cause came on to be heard before the present Chancellor, when the exceptions and petitions were all argued at the same time.

1814.

GREEN
v.
WINTER.

*Pendleton*, for the plaintiffs.

*Harison*, for the defendant.

THE CHANCELLOR. This case is brought to a hearing on exceptions, taken on each side, to the report of the referees. The defendant is charged as a trustee, and this trust appears in the declaration of trust, executed by the defendant on the 13th of *August*, 1805.

The objects of this trust are to be kept steadily in view in the examination of this case. The whole subject matter in controversy depends upon the construction of it, and the principles by which it is governed.

I shall first consider the principal exceptions taken on the part of the defendant.

[Most of the exceptions relating to charges depending altogether upon fact and evidence, it has been thought unnecessary to state the observations of his honour on those points.]

It is objected, that the defendant, having exhibited an account of payments to 19,000 dollars, the referees rejected about 17,000 dollars of the same. The question is not as to the fact of the payments, but whether they were made on account of the trust. I think they were properly rejected. They were payments to *W. Green*, and may be just, as against him. The trust was created for the benefit of *P. Heatley*, and was afterwards transferred to Mrs. *Green* and her children. Payments to *W. Green* were clearly *dehors* the trust, and not chargeable upon the trust fund. There is no sufficient evidence that Mrs. *Green* authorized

these payments to her husband ; and having but a life estate herself, she could not have authorized them, to any extent, beyond the requisite support of herself and children. As far as the referees could determine them to have been advances on the trust account, they allowed them, to the amount of about 2,000 dollars. The court cannot allow any such misapplication of the trust fund, even to the husband of the *cestuy que trust*. (*Thayer* v. *Gould,* 1 *Atk.* 615. 2 *Atk.* 245.) If the husband had applied the payments to any specific trust purpose, the trustee might have been entitled to the benefit of such application ; but we have no evidence of any such appropriation.

The facts stated in the report are conclusive against the claim of the defendant, in respect to the mortgage given by *Green* and his wife to *Ogden & Hoffman.* It appears that this mortgage was executed in *July,* 1794, on part of the trust estate, to secure the payment of two bonds ; that the mortgage was not registered until after a conveyance to *Sands & Lothrop ;* that, after judgment was entered on the bonds, the defendant bought in the same, in *January,* 1810, at a discount, and issued execution against *Green.* The defendant refused to answer before the referees whether he had the mortgage as a lien on the trust estate.

This purchase ought, justly, and upon all sound principles of equitable policy, to enure to the benefit of the trust, and not to the benefit of the trustee. A trustee is not permitted to use the information he gains as trustee, by purchasing in for himself. It would be an extremely wrong thing, as the Lord Chancellor said, in *Norris* v. *Le Neve,* (3 *Atk.* 37.) The principle is the same as to buying in the trust estate, or buying securities upon it. A trustee cannot act for his own benefit, in a contract on the subject of the trust. (*Morret* v. *Paske,* 2 *Atk.* 52. *Forbes* v. *Ross,* 2 *Bro.* 430.) The object of the rule is to keep trustees within the line of their duty. A court of equity watches the conduct of a trustee with jealousy ; and if he compounds debts or mort-

gages, or purchases them in at a discount, he shall not be suffered to turn the speculation to his own advantage. (3 *P. Wms.* 249. n. (*a.*) 1 *Salk.* 155.)

The objections taken on the part of the plaintiffs to the report, involve much more important considerations than those I have been examining; because they principally refer to the general rights and duties of a trustee.

1st. The plaintiffs object to the allowance of a number of charges, for costs, accrued to, or paid by the defendant in execution of the trust, amounting, in the whole, to 1,863 dollars and 5 cents. I think they may all be deemed just charges and allowances, except the first charge of 500 dollars, for " a counsel fee as a general retainer." This is clearly inadmissible. The trust was a voluntary undertaking for the benefit of *Heatley*, and voluntarily continued for the benefit of his sister and children. The trustee is entitled to a liberal indemnity for his expenses and responsibilities incurred in the due and faithful execution of the trust; but he cannot demand *compensation* beyond what may be founded on the positive agreement of the party. The declaration of trust contains no stipulation, or provision, for such compensation. It is cautiously worded throughout, and speaks only of allowances for all his " advances and responsibilities." The trustee cannot, therefore, charge any thing more than what is understood, in the language of this court, by just allowances. I am obliged, therefore, not only to reject this general retainer, but, also, to admit the force of the

2d. Exception to the commissions of 10, and 7, and 2 1-2 per cent., allowed in the report. The 4 dollars a day, for his time and expenses, may be allowed on the ground of a fair indemnity; but I cannot go further, without shaking the best settled principles, in respect to the nature and character of the duties of a trustee. Nothing can be stronger, or more explicit, than the uniform language of the *English* court of chancery upon this point, or, if I were even free

1814.
GREEN
v.
WINTER.

from the weight of authority, I should hesitate greatly be-fore I undertook to question the policy or wisdom of the rule.

We find the principle advanced as early as the time of Lord *Nottingham*, in the case of *How* v. *Godfrey,* 30 *Car.* II., (*Rep. temp. Finch,* 361.,) in which the defendants, as guar-dians, " demanded 20*l.* for their care and pains in managing the trust." The Chancellor decreed, that they should have their costs and charges, and all just allowances, but not any thing for their care or pains. And in the next year, in the case of *Hethersell* v. *Hales,* (2 *Ch. Rep.* 83.,) we find the same distinguished Lord Chancellor making a liberal allowance to a trustee, under the head of " charges and expenses in managing the trust ;" thereby not only settling the general rule, but, also, defining the limitations by which it was to be governed. The same doctrine has been continued through all the books, down to this day, whatever might be the na-ture of the trust, or the relative character of the trustee. (*Palmer* v. *Jones,* 1 *Vern.* 144. *Bonithon* v. *Hockmore,* 1 *Vern.* 316. *Scattergood* v. *Harrison, Mosely,* 128. *Read* v. *Snell,* 2 *Atk.* 643. *Godfrey* v. *Watson,* 3 *Atk.* 517. *In the matter of Annesley, a lunatic, Amb.* 78.) In one of the latest cases, *Fearns* v. *Young,* (10 *Ves.* 184.,) Lord *Eldon* admits, that where a trustee has fairly expend-ed money by reasonably taking opinions, and procuring di-rections necessary to the due execution of the trust, he was entitled to such charges, under the head of just allowances. In *Robinson* v. *Pett,* (3 *P. Wms.* 249.,) Lord *Talbot* declares the reasons of the rule refusing an allowance to a trustee for his care and trouble. viz. that, under that pretext, the trust estate might be loaded and rendered of little value ; and, also, because of the great difficulty there might be in settling and adjusting the *quantum* of such allowance, as one man's time might be more valuable than that of another, and that the rule was no hardship upon the trustee, since the acceptance of the trust was of his own choice. In another

case, *Ayliffe* v. *Murray*, (2 *Atk.* 58.,) Lord *Hardwicke* observed, that chancery looked upon trusts as honorary, and a burden upon the honour and conscience of the trustee, and not undertaken upon mercenary motives, though a fair and open bargain with the *cestuy que trust*, for compensation, would be admissible.

3. The same principle supports the exception to the allowance of 8,482 dollars 69 cents, including interest, for expenditures for improvements of the trust estate, as by building houses and mills, clearing land, making roads, &c. These expenses were not within the purview of the trust, which went only to authorize the defendant to *sell* the land, to raise money to pay off the encumbrances, and to restore the residue of the estate. The referees report that the improvements were made in good faith, but that, in general, they were of no real or substantial value to the trust property. These charges appear to be still more exceptionable than those under the head of compensation; and to tolerate such wide deviations from the nature and terms of the trust would be creating a most dangerous precedent. It would be placing trust property in the greatest jeopardy, and, perhaps, incumbering it with burthens too grievous to be borne. I cannot, therefore, admit of any allowances under this head, but such as may justly be considered as reasonable reparations or repairs, and these do not appear, from the report, to exceed much, if any, the sum of 700 dollars. Nor is this point left without a clear and explicit sanction in the decisions of the court of chancery. It is the established doctrine, that a trustee can only be allowed for necessary expenditures; (*Fountaine* v. *Pellet*, 1 *Ves.* jun. 337.;) and the *cestuy que trust* has always his option to take, or refuse, the benefit or loss of the unauthorized act of his trustee. (*Harrison* v. *Harrison*, 2 *Atk.* 120. 2 *Bro.* 656—8.) The case of *Bostock* v. *Blakeney*, (2 *Bro.* 653.,) is quite analogous to the present. That was a trust to purchase land, and the land was purchased, and money expended in repairs and im-

1814.

GREEN
v.
WINTER.

provements; and though the improvements were substantial and lasting, the Chancellor would not admit of such a misapplication of the funds of the trust. It must be, and always has been, the anxious wish of a court of chancery, to save a trustee from harm while acting in good faith ; but a misapplication of the trust property, by going out of the trust, can never be permitted to injure the *cestuy que trust*, without his assent. (2 *P. Wms.* 453.   3 *Atk.* 441.)

4. The next exception on the part of the plaintiffs, is equally well taken.   The report states that the defendant paid, on account of the trust estate, for stock, hay, farming utensils, &c. to 3,729 dollars 37 cents, including interest, and that on the purchase and resale of stock for the farm, such as cattle, hogs, &c. he lost 1,300 dollars, and for which the report states the defendant was entitled to a credit.   It appears further, that while the reference was pending, the defendant sold stock, farming utensils, &c. and refused to render an account, and that when examined before the referees, he said it was a question whether this agricultural stock was trust property, and that, if he was allowed the cost of it, he would credit the sales, and declined further to answer about the sales.   The whole of this account, both debtor and creditor, ought to be struck out of the report, and not to be taken into the computation of the balance due.   It was a business altogether out of the trust ; as much so as if the defendant had engaged in commercial or manufacturing business on the estate.

5. Another objection by the plaintiffs is, that the defendant ought to have been charged with such rents as the report states that the trust estate would reasonably have produced ; inasmuch as the defendant refused to exhibit to the referees, though repeatedly called on for the purpose, a statement of leases, or other contracts, for renting the farms belonging to the trust estate.   This appears to me to be perfectly just, under the circumstances of this refusal, and the defendant ought to be charged with such reasonable

rents, from and after his assumption of the trust, in those cases in which the report states what would be a reasonable rent, and except in the special cases already mentioned.

6. The last objection relates to what is termed the *Bay-side* farm, on *Long Island.* It appears that the defendant agreed to purchase this farm for Mrs. *Green,* and to pay for the same out of the proceeds of the trust estate; that he purchased it in *March,* 1806, and gave his bond and mortgage; that when the bonds fell due, the defendant refused to pay for the same, and caused the mortgage to be foreclosed, and also a suit in ejectment to be instituted, by means of which Mrs. *Green* was obliged to abandon the farm. The referees report, that the defendant had paid, on account of this farm, 6,751 dollars 44 cents, and had received, on the sale of it, 4,315 dollars 78 cents, and they charge the costs of the suits, and the loss on the sale of the farm, to the trust estate. The question is, on whom this heavy loss ought to fall; on the defendant, or on the *cestuy que trust?* Here was a trust voluntarily undertaken by the defendant, and he refused, eventually, to pay for the farm, according to his original undertaking, out of the trust estate, when he either had funds in hand to pay, or the means in his power to raise them. It appears to be an inequitable proceeding on the part of the defendant, and no just reason is given for the non-fulfilment of the trust. The farm had, in 1807, been conveyed to *Heatley,* subject to the mortgage. The conduct of the defendant, in suffering the farm to be taken for the debt, and in buying a judgment against *William Green,* and seizing, under it, the personal estate in possession of Mrs. *Green,* on that farm, (which facts are specially set forth in the report,) has strongly the appearance of a design to coerce the *cestuy que trust* to some undue accommodation. I am, accordingly, of opinion, that this exception ought to be allowed, so that the loss on the farm, and the costs of the suits, may not be chargeable to the trust estate.

1814.

GREEN
v.
WINTER.

I have thus finished an examination of the numerous exceptions, taken on the one side and on the other, to the report of the referees, and if my conclusions may seem rigorous towards the defendant, it is because I found myself necessarily led to that result, by the facts in the case, and the known and settled principles of equity, in respect to the responsibility of a trustee. Those principles will appear all-important to the community when we consider the necessity of strict guards upon the powers of trustees, to whom are usually confided the interests of those who are incompetent to help themselves, and who are thrown, destitute and feeble, upon the protection of others. Individual hardship had better be endured in a particular case, by a strict adherence to rule, than to tolerate a relaxation, which might be productive of great public inconvenience.

I shall, therefore, direct the report of the referees to be referred to a master, to state an account upon the basis of that report, but subject to such variations and corrections as I have herein suggested.

The following order was thereupon entered :

" That the third exception of the defendant be allowed, so far only as respects the sum of three hundred dollars, therein stated by the defendant, and in the report, to have been paid by him to *James Battles*, to rescind a contract therein mentioned, for the purchase, by him, of certain lands from the defendant, as trustee for the plaintiffs, or some of them, whereby the lands became again vested in the said *Winter*, as trustee, in the same manner as other parts of the said trust estates, and that the said *Joseph Winter* be allowed the said sum of three hundred dollars, with interest thereon ; and that all the other exceptions of the defendant, to the report of the said referees, be overruled.

" And in relation to the exceptions taken by the plaintiffs to the report, it is further ordered, the first of the said exceptions be allowed, as far as respects the sum of

five hundred dollars, and the interest thereof, allowed in the report, to the trustee, as a retaining fee, which sum is not to be allowed to him on the account herein directed to be taken ; and that the first exception, so far as it relates to all other costs and charges therein objected to, be disallowed ; and that the costs and charges (except the said five hundred dollars, and interest) be allowed to the trustee, on taking the said amount ; that all the other exceptions taken by the plaintiffs to the report be allowed, except as follows, viz.

" 1st. That in relation to the rents and profits chargeable against the defendant, as trustee of the estates mentioned in the report, he shall, for the rents of the *Oriskany* farm therein mentioned, for the years 1809, 1810, and 1811, be charged only with the sums stated in his accounts, filed with the said report, to have been received by him for those years ; and that, in relation to the rents and profits of the same farm for other years, and of the remaining parts of the trust estates, the defendant shall account and be charged with what might reasonably have been obtained for the same, from the time he took charge of the said trust estates to the date of the report, which account is to be taken according to the facts therein stated, and interest allowed on them from the respective periods when the same would have been receivable, in the manner interest is calculated in the report on the debits and credits therein mentioned.

" 2dly. That the defendant shall be allowed the sum of one thousand seven hundred and seventy dollars, and interest stated in the report ; to be allowed the said trustee for his time and expenses in and about the execution of the trust, and no more.

" And it is further ordered and decreed, that it be referred to Mr. *Hansen*, one of the masters of this court, to take and state an account of the amount due to the plaintiffs from the defendant, *Joseph Winter* ; and that, in taking such account, the master proceed according to the report of the

referees, and the facts therein contained, subject to the variations and alterations herein directed, in relation to the exceptions and parts of exceptions herein before mentioned, as allowed or varied ; in relation to which, he is to be governed by the said exceptions, and the said alterations and variations thereof, as part of this order for taking the said account.

" And it is further ordered, that the costs upon the said exceptions be allowed to the prevailing party, where they have been allowed, and to the opposite party, where they have been disallowed, to be taxed by the master ; and that the sum taxed in favour of the party having the smallest sum, be set off against the amount taxed in favour of the other party, and that the balance be paid."

