Smith v. Gibson.

## Thomas M. Smith,

### vs.

## Thomas R. Gibson.

In an action for specific performance of a contract to convey land on payment therefor, either by delivering a certain share of the crop raised thereon, or in money, at the option of the vendee, who was entitled to possession and bound to till, keep the fences in repair and pay taxes on the land; it was found on a trial by the district court, that after part payment in kind, and before default made by plaintiff, defendant took possession of the land and prevented plaintiff from putting in any crops; refused to recognize his claim to the land; and informed him that he might assert his rights at law. Plaintiff's complaint alleged performance on his part, except so far as defendant had prevented him, and that said part payment, and the value of the rents, use and occupation of the land, exceeded the price of the land and interest; but when the action was commenced they did not in fact amount to so much, nor did he, before commencing it, offer to pay in money, or otherwise, any balance that might be due after deducting such rents, &c.

*Held*, that taking the facts to be as found by the court below, the conduct of the defendant would amount to a waiver of such offer.

Defendant in such case is chargeable with the fair rental value of the land, annually applied on the contract price, and interest down to the decree notwithstanding he may have sold the land since the suit was commenced, deducting taxes paid by him and expenses of keeping the fences in repair.

By contract duly recorded, A agreed to sell a certain piece of cultivated, but unoccupied land to B, who assigned his interest, with A's assent, to C, who went upon the land in October, 1863, repaired fences, and verbally agreed with A not to plow till spring, before which he enlisted, and left the State. In May, 1864, A conveyed the land to D, who had notice of the contract, but not of the assignment to C, nor of what had been done under it as aforesaid. *Held*, that D was not affected with constructive notice of C's rights.

---

Smith v. Gibson.

---

An appeal was taken in this case by the defendant from the judgment of the district court of Dakota county. The trial was had before the court without a jury, and a bill of exceptions was settled and allowed. The findings of the court below appear substantially in the opinion of the court, with such matters from the bill of exceptions as are necessary to give a full understanding of the case, which render a further statement unnecessary.

Smith & Van Slyck for Appellant.

Clagett & Crosby, and Smith & Gilman for Respondent.

*By the Court*—Ripley, Ch. J.—The plaintiff in this action demands restitution of the possession of certain land ; assessment of damages for an alleged wrongful eviction therefrom and withholding possession thereof; and for rents, use and occupation thereof; application of sufficient to discharge an alleged balance of purchase price of said land, judgment for the residue and treble damages ; and that defendant should convey said land to him.

The action was commenced August 2d, 1866. On a trial by the court on the 23d day of September, A. D. 1868, the following facts were found in substance, viz : That on the 2d day of May, 1863, Harriet P. Norton, being the owner of the southeast quarter of section 7, town 114, range 17, under fence and cultivated, but not built upon; and Albert T. Norton, her husband, agreed with Joseph F. Felton as follows ; in writing, under seal, duly executed, and acknowledged by all said parties, and recorded. The said Felton ; that he would immediately enter into possession of said land, furnish seed and all necessary work and put the same into crop in the spring of 1864, and each succeeding year, and deliver

said Nortons, by November 1st, in each year, wherever directed in Hastings, one-third of the wheat and oats raised, and also one-third of the crops for 1863, subject to the stipulations of existing leases, and if any portion of the land were put into other crops, an amount of wheat equal to one-third of the average crop of wheat, for a like quantity of land, until the avails thereof at the market price, when delivered, in Hastings, with any further sum paid by him should amount to $2,000 with annual interest from said 12th day of September; to cultivate said land in a good and husbandlike manner, keep the fences in good repair and pay the taxes thereafter assessed. Said Nortons to retain the title to one-third of the crops till delivery; and said Nortons agreed to deliver such possession, allow Felton to so cultivate, and to receive said share as aforesaid, and allow said market price; till the same, with such moneys as said Felton might at any time pay, should equal said $2,000 and interest, and on full payment of said purchase price, to give him a good warranty deed and clear title to the land.

If Felton made default in any respect, he was to forfeit all right to the premises, and all moneys paid, and said Nortons might take possession of, and hold and enjoy the premises as fully as if said writing had not been executed. Said writing was agreed to be binding on the heirs or assigns of both parties.

That Felton took possession under the agreement and assigned it, about the 24th September, 1863, to plaintiff, who notified said Nortons thereof. They agreed thereto, and with their consent plaintiff the same fall entered on the land under said contract and assignment and made repairs on the fences.

That on the 7th day of May, 1864, Nortons sold and conveyed the land without plaintiff's knowledge or consent, to

the defendant, who had notice, at the time, of the agreement between them and Felton. That defendant immediately took possession and control of said land. That soon after said Nortons informed the agent of the plaintiff, who was absent in the army, of said sale, and that said defendant would manage the farm.

That plaintiff after his return from the army in 1865, " *notified defendant of his claim and determination to enforce it.*" That defendant "*refused to recognize the claim of said plaintiff to said land, and informed him that he might assert his rights at law.*"

That plaintiff did not demand a conveyance, nor offer to pay defendant "any balance that might be due after deducting rents," &c. That in 1864, and ever since, said plaintiff was and has been prevented from putting in crops on said land by defendants. That neither Felton nor plaintiff as said Felton's assignee have had any *absolute* possession of said premises since May 7, 1864. That plaintiff put in no crop in 1864, or thereafter, said Nortons or their assigns having the actual possession of the lands in and from the spring of 1864, and from that time denying plaintiff's right to possession. That Nortons conveyed to defendants before any default made by Felton or plaintiff. That plaintiff has paid no taxes on said lands, said Nortons or their assigns having paid the same without plaintiff's knowledge till, after payment.

That the crop of 1863, to the value of five hundred dollars, was received by Nortons, under the contract. That during the years 1864, 1865, 1866 and 1867, said land could have been rented for the money rent in each year of $480. That after payment of said $500, there was due on said contract a balance of $1558.33, and that said sums of $480 applied each year, would fully extinguish the

Smith v. Gibson.

said balance and the interest, as stipulated in said contract.

As conclusions of law the court found that "the equities of the case" were with plaintiff, and that he was entitled to a deed from defendant of the land, and judgment was entered accordingly, with costs.

The case comes up on defendant's exceptions to the rulings of the court at the trial, and the aforesaid findings and judgment, upon an agreed statement of "the facts admitted to have been proven at the trial in addition to those found by the court, the ruling of the court excepted to by the defendants, at the trial, with the evidence given and the facts conceded to be proven thereunder, also the evidence given on the points excepted to and included in the foregoing enumerated causes of exception."

The aforesaid sums of $480 for each of the years aforesaid, are called by the court below in one part of its decision "the value of the rents," in another, "the net profits," in another "the rents," in another, "the net profits and reasonable use and occupation" of the land. Notwithstanding this apparent confusion it is plain from the bill of exceptions that what is meant is, what sum in gross, the owner of the land could have let it for, in money, without reference to defendant's actual receipts or actual profits.

These sums, so found, the court applies on the contract price, no deduction being made for taxes paid, or repairs of fences agreed to have been made by defendant, and taking no account of the fact that if plaintiff had retained possession and control of the farm, the stipulations of the contract would have been a limitation on his power of dealing with the premises, which would and must have affected the value of the use thereof.

In other words, the court has allowed the plaintiff what an owner might have rented the farm for, and not what the

use of the farm was worth to plaintiff, subject to the obligations of the contract, upon the theory, apparently, that if a defendant and his grantors wrongfully took possession of the land and prevented plaintiff from putting in crops, plaintiff, when once wrongfully put out of possession, whether by defendant, or those under whom he claims, is excused from further performance, or offer of performance of the contract on his part, is entitled to a conveyance, and to bring an action at once for specific performance by defendant of that part of the contract.

This action was tried in 1868 and the court finds that taking the rents of 1867 into account the contract price had been paid. But as the action was commenced in 1866, it might have been tried, for aught that appears, in March, 1867. There would then have been no rents of 1867 to apply. Would the court below have declared the defendants' lien for the purchase money gone and have directed a conveyance? That would have been to mulct defendant in damages for his breach of contract. But equity will not adjust matters upon the basis that the contract is broken, and that plaintiff is entitled to damages for the breach. He cannot have both damages for the breach of contract and a specific performance of it. It is not the breach of the contract, but the contract itself that gives the right to an action for specific performance. *Bruce vs. Tillson*, 25 *N. Y.*, *p.* 194.

Plaintiff's performance of the contract on his part was a condition precedent to his right to a deed. He could have entitled himself to it, by paying the price of the land, in grain, according to the stipulations of the contract in that respect, or by paying in money, at his option. But after part payment in kind, the defendant, as the court below

Smith v. Gibson.

finds, wrongfully prevented him from further completing in kind, though ready and desirous to do so.

He is, in such case, entitled to relief in equity, but to such, and upon such terms, as will do complete justice between the parties. 2 *Sto. Eq.* § 779, 780. 2 *Hilliard vendors p.* 138. 3 *Lea ca. in Eq., p.* 89. *Waters vs. Travis,* 9 *Johnson* 450.

And the court might in such case have directed the defendant to convey, upon being paid within a specified time, the balance of the purchase price and interest after deducting the $500 already paid; and as the plaintiff is, in equity, considered as the owner of the land, and would be considered in this case as an owner, who had been wrongfully deprived by the defendant, of the possession to which he was entitled; there would be also deducted from the amount payable by him, such sums as the defendant would be equitably chargeable with, in respect of the value of the use and occupation of the land. But the plaintiff made no offer, before bringing his action, to pay any balance that might be due on the price in money or otherwise. And though the complaint alleges that the accrued rents and value of the use and occupation exceeded the amount due on the land, yet as the fact was not so, it is objected, that without paying in grain or offering to pay in money, he had not a cause of action at the time of the commencement of the suit.

The general rule is, that there must be either performance or an offer to perform, and refusal by defendants to accept performance, to entitle plaintiff to bring the action; but this requirement, like any other may be waived by defendant.

In the case of *Willard vs. Fisk,* 2 *Pick.* 540, under a statute requiring a mortgagor, bringing a bill to redeem with-

out making a tender, to prove a demand on the mortgagee to render an account and a refusal on his part to do so, it was held, that a denial, by the mortgagee, of plaintiff's right to redeem in answer to his request to know what was due, would be sufficient to support the action, although the demand was made under circumstances which would have justified a refusal to render an immediate account.

In the case at bar, plaintiff was only bound to pay what was due after deducting whatever defendant was equitably chargeable with in respect of the use and occupation; as to which plaintiff had no means of knowledge, and could therefore have neither tendered nor offered to pay any definite sum. Taking the facts to be as found by the court, that defendant prevented plaintiff from putting in crops, refused to recognize his claim to the land and informed him that he might assert his rights at law, we should not be willing to say, that plaintiff had failed to prove a waiver by defendant of any offer to put in crops or pay in money sufficient to sustain the action for specific performance. The failure to demand a deed would go only to costs.

Considering the action as sustainable, there is no reason for taking it out of the general rule, as to account.

Defendant is in equity the trustee of the legal title for plaintiff. He has a lien for the purchase money, but plaintiff was entitled to possession. His trustee has wrongfully taken and kept it. He must account for the rents and profits, and there is no more reason why the account should not be taken down to the decree in his case, than in that of a mortgagee, and if the amount with which he is chargeable exceeds what is chargeable to plaintiff for unpaid purchase money and interest, there is certainly no reason why the latter should not be deemed to be thereby paid.

The defendant is chargeable with the fair rental value of the land annually applied on the price.

But he should be allowed for keeping the fences in repair and for taxes. 1 *Wash. R. Prop.* 578. 1 *Story's Eq.* § 512. *Green vs. Winter,* 1 *Johns. Ch. Rep. p.* 26–31, 41. There are two reasons for this:

First. The taxes and repairs are burdens incident to the ownership.

Second. His contract bound plaintiff to do these things. In either view the taxes and repairs must necessarily be deducted from the rents, to find what the use of the land would have been worth to him.

The court below found that the defendant, or his grantors, paid the taxes before plaintiff knew it, that is, that they prevented plaintiff from performing his contract in that particular, by performing it themselves.

But if the trustee pays taxes for the *cestui que trust,* though not at his request, will he not be allowed for it? *Green vs. Winter,* 1 *Johns. Ch.* 26, 31. Besides, the finding must be read in connection with the agreed statement at *folio* 79, whereby it would seem that it was by reason of plaintiff's own laches that the taxes were so paid.

It is insisted, however, on the authority of *Holmes vs. Davis,* 21 *Barbour* 265, that defendant cannot oust the plaintiff from his lawful possession and charge him with service rendered, and money expended, without his consent and against his will, but that defendant is chargeable with the entire profits without deducting expenses.

But that case was reversed on appeal. (*Holmes vs. Davis,* 10 *N. Y., page* 488.) The plaintiff, lessee of a mill, was by the lease to bear all the expenses of running it and pay the lessor two-thirds of the gross earnings during the term. He was wrongfully ousted by the landlord. Having recovered

the possession in an action of ejectment, he then brought this action, as in trespass for the mesne profits. The court of appeals held that he could not recover one-third of the gross earnings during the landlord's occupation, but that the expenses of running the mill must be deducted. The plaintiff, there, had already recovered the possession, and claimed damages for its wrongful withholding and the rents, uses and profits of the mill during the time thereof. In the present case the plaintiff, being out of possession, joins with his equitable action, an action to recover the possession and also for his damages sustained by the wrongful withholding thereof, and for the rents and profits, as he is allowed to do by our statutes. And as in *Holmes vs. Davis*, so in this case it may be said, that the general scope and apparent intention of the present action, taken in connection with the demand of judgment, prove that the object sought in this respect is a recovery for the use and occupation of the land, during the time the plaintiff had been deprived of possession; that is, it is so far an action as in trespass for mesne profits. The rule of damages prescribed by our statutes, no more than in New York, requires them to be adjusted upon the footing of tort, (except in forcible entry and detainer.) The defendant, therefore, in this case as in that, would be chargeable at law only with the value of the interest of which he has wrongfully deprived the plaintiff. Plaintiff's right to possession was not integral, but limited by the obligations of the contract, and such limitation would be taken into account in assessing his damages at law.

The court below has not passed upon plaintiff's legal cause of action. There is no judgment for possession nor for the balance of rents after extinguishment of the contract price; but if the plaintiff could not have recovered the gross rental value of the land in an action for the mesne profits, the

Smith v. Gibson.

iuconsistency of allowing them in equity is the more apparent when we reflect that one reason why they cannot be recovered in the action at law, is, that though in form an action of trespass, it is in substance a liberal and equitable action, admitting of every equitable defence. *Sedgwick on Damages, page* 126; *Murray v. Gouvernier*, 2 *Johns. Cases, p.* 438.

For the foregoing reasons, and taking the findings of the court below in matter of fact to be in all respects justified by the evidence, it is nevertheless apparent that the sum of $1920, charged to defendant is too great by the amount of the taxes paid by him, and the necessary repairs of fences made by him. As we cannot say whether or not, after the proper deduction on this account from said $1920, the residue would be sufficient to extinguish the contract price, the judgment must at all events be reversed.

But we are not satisfied that the evidence justifies the finding that the defendant prevented the plaintiff from putting in a crop in 1864. In the first place, that finding is so materially modified by what follows in the same folio as to justify the inference, that in so finding, the district court holds defendant answerable for the wrongful acts of the Nortons, prior to May 7, 1864, the date at which it finds defendant took possession and control of the land. But though the defendant had constructive notice from the record of the agreement between the Nortons and Felton, the court below does not find that he had any notice of the plaintiff's claim prior to June 1865. The presumption from the findings is, that he had not, and in the bill of exceptions it is agreed affirmatively that he had none till 1865.

As the land was unoccupied, the mere entering thereon by plaintiff in October 1863, and repairing the fences and verbally agreeing with the Nortons that he need not plow

till spring, the defendant being ignorant of any such trans-
actions, is not a possession to affect defendant with construc-
tive notice of his rights.    2 *Lead. ca. in Equity*, *p.* 141, *p.*
166, 167.    *McMechan vs. Griffing*, 3 *Pick.* 149.

Although the bill of exceptions is obscurely worded, it is
very clear that it means to state all the evidence and facts
bearing upon the question whether or not the court was jus
tified in finding that the defendant prevented the plaintiff
from putting in a crop, and taking the bill of exceptions and
the findings together, the court below appears to have consid-
ered the defendant's actual possession as not commencing till
after he had received his deed, and then in ignorance, in
fact, of the assignment to plaintiff, but affected with con-
structive notice thereof, either because the contract was ex-
pressed to be binding on the assigns of the respective parties
or because of the above mentioned prior acts of the plaintiff
upon the land.    But the former could no more have that
effect than the latter.    There is no presumption that because
a contract is assignable it has therefore been assigned.

That Felton had left the country the year before, that the
fences were down, and that nothing had been done on the
land at a time of the year when the crops for which the con-
tract stipulated should have been sown, and growing, would
raise a presumption, rather that Felton had abandoned the
contract, than that he had assigned it to one ready and will-
ing to perform it, especially as the assignee had voluntarily
gone out of the State in the U. S. service.

It would be inequitable under such a state of facts to
charge the defendant with more than the actual profits of
the land prior to the time that he was informed of plaintiff's
claim.    Equity only does this when defendant has acted in
bad faith.    *Wash. Real. Prop.* 577, 578.    *Green vs. Winter*
(*supra*,)   *Root vs. Yeomans et al.*, 15 *Pick*, 488.    *Dexter vs.*

*Arnold*, 2 *Sumner*, 108.   *Rainsford vs. Rainsford*, 1 *Mc-Mullan*, *p.* 335.  2 *U. S. Eq. Digest*, *p.* 631, § 466.  For the wrongful acts of the Nortons, plaintiff has his remedy against them.

But of those, defendant had neither actual nor constructive notice.   Either party to the contract had a right to sell by its terms.   The sale by the Nortons to defendant was therefore in itself no fraud on plaintiff.

The defendant took subject to the contract.   And as to any other wrongful action of the Nortons, if the conversation between Albert T. Norton and plaintiff's agent were all, as seems to be most fairly to be inferred from the whole case before us, it would not excuse the plaintiff in his entire inaction till June, 1865, or amount to preventing him from tilling the land.   But it is unnecessary to pass upon this point as there must in any event be a new trial.

Evidence that defendant had sold the land since the suit was commenced was rightly refused.   If upon a new trial plaintiff should be entitled to a judgment for a deed, it ought, supposing the facts to be as stated in this finding, to be without costs.   This however is to be understood only of a judgment for specific performance.   It has no reference to plaintiff's legal cause of action to recover possession, which has not been passed upon by the court below.

The judgment of the court below is reversed and a new trial ordered.