Thompson, Ch. J.
The conclusion to which I have arrived, on a careful examination of this case, renders it unnecessary for me to notice all the questions that were raised and discussed on the argument. I shall confine myself to that which relates to the authority of Mary Osgood, alone, as sole surviving executrix of Walter Franklin, deceased, to sell and convey the lands in question to Clinton and Not ton. The decision of this point depends upon the construction to be given to that clause in the will of Walter Franklin, under which the authority to sell is claimed.
The testator, after sundry specific devises and bequests, gives the whole residue of his estate to his wife, his two daughters, three brothers, and two sisters, each one eighth ; and appoints his wife, and three brothers, executors. Then comes the following clause: ‘‘I give to my executors that may act, and to the major part of them,, their heirs or executors, full power to sell any or all my real estate not already devised,’’ Sec. The plain and obvious meaning of this power, as well as the grammatical construction to be given to the words is, that the authority to sell is given, in the first place, to all the acting executors, and for the purpose of preventing any one of them from defeating a sale, he declares that a major part of them may sell. Still further, to uphold the power, and guard the sale, and prevent an improvident disposition of his property, he provides that in case of the death of any of his acting executors, their heirs or ea> ecutors shall be substituted as trustees in their places. No other interpretation, in my judgment, can be given to this power, without rejecting some words altogether, and rendering others useless, and without meaning. If so, Mrs. Osgood alone had no power to sell. On the death of the testator, Walter Frank *566 lin, in the year 1780, two only of his executors, Samuel and John Franklin, qualified, and took upon themselves the execution of the will. After a lapse of twenty-seven years, and after the death of the two executors who had acted, Mrs, Osgood qualified as executrix, and, soon after, executed the deed to Clinton and Norton, who had married her two daughters, being two of the eight residuary devisees named in the will.
It is an incontrovertible rule, running through all the cases, on the construction of wills, that the intention of the testator is much regarded, and ought to have a controling influence in construing these powers; and that a greater or less latitude is given to them, for the purpose of carrying into execution such intention. This rule is noticed and recognized by the chancellor, in his opinion in this case. We find in the books great subtlety in many of the distinctions that have been attempted to be made, between what is called a naked power or authority, and a power coupled with an interest or trust. It is admitted, • &s a general rule, that with respect to the former, it must be executed by all to whom it is delegated. But where the authority is connected with an interest or trust, and is delegated to several, it does not become extinct by the death of one or more, as long as there is any one remaining to execute the power. It then devolves upon the survivor; unless the testator, or person from whom the power emanates, has provided for the event of the death of one or more of the executors or trustees, and has appointed a substitute in their place; in such casé the substitute becomes vested with all the power and authority of the first trustee; and the case before us is one of this description. On the death of Samuel and John Franklin, their heirs or executors are, by the express terms of the will, to be substituted in their place, and entrusted with the execution of this power, and ought to have united with Mrs. Osgood, in order to pass a valid title.
According to my view, therefore, of the authority to sell, given by this will, it will not be, necessary for me to enter into an examination of the nice and refined distinctions between naked powers, and powers coupled with an interest. For, beyond all question, it was a matter resting altogether with the testator, to limit and guard this power, in such manner as jhe thought proper; and if not only the necessary construction of the words which he has used, but his plain and obvious mean- *567 lag, as collected from the whole will, was, that this power should not be exercised by one executor alone, we cannot sane-J tioh and confirm the deed from Mrs. Osgood, The power here given is, in the first place, to such of his executors as may act, and to the major part of them. Three out of four of the executors have acted. But the deed was not given by all, or by a major part of those who did act» The power, therefore, in this .espect, has not been pursued. The testator, with uncommon caution and circumspection, (and doubtless, if we look at the provision in the trill, and the disposition of his property, for the very purpose of preventing an injudicious sale of his lands) provided for the event of the death of one or more of his acting executors, and substituted in their place, their heirs or executors, the very persons to whom the estate would doubtless pass; and no one can question the right or legal power of the testator so to do. The books furnish us with a variety of cases of this kind. An example may be seen in Moore, 61. where the testator directed, that his lands should be sold by his executors, or the executors of his executors, and one of bis executors dying intestate, the question was, whether the executors of the other executor could sell; and it was held that they could not, because the authority was joint to the executors of both executors, and, therefore, if one failed, the other could not execufe it. (See also other cases collected by Powell, on Devises, 296.)
In the cases, generally, in the books where this question is examined, we find the power given to the executors, without any provision for the event of their death. The reason why the power is held to survive, is, to prevent the failure of the trust for the want of a trustee. But no such failure could occur here, because the testator has expressly designated the persons who may execute the trust, on the death of those first named. • Had he barely gives to his" executors a power to sell, and accompanied such power with a trust, the law might cast that power upon the survivor, to prevent its becoming extinct, and the trust failing. But the testator had a right to control this legal effect, by an express appointment, by himself, of a trustee; and this he has done, by substituting the heirs or executors of the first trustees. The objection, that this would produce incongruity and confusion, is no satisfactory answer. If the meaning of the testator was left doubtful, we might have *568 recourse to considerations of inconvenience, if any existed, fot ^ie PurPose of ascertaining the probable intention. But where words are so plain and explicit, as not to admit of doubt, we are not at liberty to indulge in objections, on the ground of inconvenience. Whatever weight such objections might be entitled to, where the executors were not beneficially interested in the land over which the power was to be exercised, they do not exist here. The executors appointed in the will, were four of the. residuary devisees, and entitled to their share, either of the land or the avails thereof, upon the sale, ' It was nota trust exclusively for the benefit of others, nor could the executors have been compelled to execute it; they are not ordered to sell, but simply authorized so to do; it was, therefore, left in their discretion, whether to sell or not. The other residuary devisees might, probably, have called upon them in a court of chancery, either to execute or renounce the trust; so that they might take the estate devised to them, stripped of this power of sale suspended over it.
Under such circumstances, there was a peculiar fitness in the-testator’s giving the direction to this power which he has done. As the four executors named in the will were entitled to one half of the property on which the power could operate, they were very much interested in the due execution of it, if it was at all to be executed. It was, therefore, proper that their judgment, or that of the major part of them, should be exercised as to the sale, and if they should die without executing the power, or disposing of the property, it was very reasonable that the authority should accompany the estate when it went into the hands of their representatives. As to one half of the land, it was a mere question of judgment with the executors, whether, or not, to sell their own property. There were no debts or legacies to be paid, and no necessity for selling. The testator, therefore, left it in their discretion, whether to sell, or not, as-they should judge most for the benefit of the estate; and the two acting executors not having, for twenty-seven years, thought proper to sell, the inference is irresistible, that in their judgment no sale ought to be made. To ratify and confirm a sale made by one, would not only be directly repugnant to the words of the will, but would be depriving others, who were interested in the lands, of the guards and checks wisely provided by the testator against an improvident sale. If the testator had intend *569 ed this power should devolve Upon, and be exercised by, any one executor, his language would have been, I give to my executors, who may act, and the survivor of them, his heirs or executors; instead of which, the power is given to the major part of the executors who may act, and to their heirs or executors. This is a limitation of the power to a majority of the acting executors, and is equivalent to saying, it shall not be exercised by a less number. The question is not, therefore, on whom does the law cast the power, where the testator has not expressly provided. The case did not occur under this power, when there was no other trustee to execute it but Mrs. Osgood ; for there were both heirs and executors of the deceased executors, who could have joined in the deed, at the time Mrs. Osgood gave it.
Had Samuel and John Franklin been living, no one will pretend, that the deed of Mrs. Osgood would have been valid $ and, why should it be when those whom the testator has substituted in their place are living? If it was not intended by the testator, that, in case pf the death of all or any of his acting executors, their heirs or executors should be the substitutes charged with the trust, why were they all named ? No possible reason can be assigned for it.
It ought to be kept in mind, that the executors are not ordered or required to sell, but are barely authorized so to do. The legal estate, whether vested in the devisees, or in the heirs at law, was subject to be devested by a sale, if in the judgment of the major part of the acting executors, it should be thought most for the general benefit of the estate ; nor can it alter the construction of this power, if the legal estate should be deemed to be vested in the executors. So far as the executors were charged with any trust in the management and disposition of the estate, it was the same, whether the land remained unsold' or was converted into money. It was to be applied to the benefit of the same eight residuary devisees, of whom the executors themselves were four. If, then, the intention of the testator, collected either from the words he has used, or from the general scope and object of the will, is to govern in the construction of the power, it appears to me very obvious, that such intention has not been pursued. When he has limited the exercise of this power to a major part of his acting executors, and in case of their death, substituted in their *570 p[ace their heirs or executors, it cannot be, that such power is duly executed by a single surviving executor. The testator has expressly guarded against such an execution, by providing a substitute, in case of the death of any of the acting executors. And, until there be a failure of the trustees expressly provided by the testator, there is no ground or principle on which the law will step in, and arrest the power from the hand to which it has been committed by the testator. It was very much pressed on the argument, that it is fairly to be presumed, from the provisions in the will, that the testator, in the appointment of his executors, contemplated the event of none of them qualifying, except his widow; but, I can discover nothing to justify such a conclusion. Where executors have no interest or benefit growing out of the will, and are barely acting for others, it is not unreasonable to suppose, they will reluctantly take upon themselves the executorship. But, when they are so deeply interested, as these executors were, it is unreasonable to conclude, that they would not qualify. They would very naturally wish to take the care and management of their, own property, and prevent its being sacrificed. But, independent of this, the supposition, that the testator contemplated, on any event whatever, that his widow was to execute this power solely, is repugnant to the very terms of the authority. The power is given to the major part of his acting executors ; and these words, major part, can have no application, whatever, to a single executor, and are, indeed# entirely senseless. It is an invariable rule, in the interpretation of writings, that if possible, they must be so construed as to give effect and meaning to every part; and, no words are to be rejected unless they are repugnant to, or inconsistent with, other parts of the same instrument. Upon this rule of construction, how can we entirely reject the words, their heirs or executors ? The testator has thought proper to direct, that if any of his acting executors should die, their heirs or executors, (as it respects the execution of the power,) should be substituted in their place ; and, in this there is nothing repugnant to any other part of the will. It is a plain, simple, and intelligible provision, and, in my judgment, a wise one, if we look at the disposition which the testator has made of his property, and allow him the right of making his own will, tie has seen fit to give five-eighths of the property now in question to his brothers and sisters. Whether this was a wise, or discreet measure, or not, *571 I do not feel myself at liberty to inquire. It is enough for me, that he had a right to do so, and has so done. This disposition ought not to be defeated by giving to his widow solely, a power which he never intended she should have, of thwarting his will, and throwing the property into the hands of her daughters. This power had laid dormant for twenty-seven years. Neither Mrs. Corsa nor Mrs. Wislar, nor any other of the cestuy que trusts, had asked for an execution of it. It was voluntarily assumed by Mrs. Osgood, after a lapse of time sufficient, and more than sufficient, to presume an extinguishment of the power, if the cestuy que trusts had been in possession of the land, and we are warranted in saying, it was assumed for the express purpose of executing this deed, as we cannot reasonably suppose that the business appertaining to the settlement of the estate remained open for such a length of time : but this does not rest on presumption. Mr. and Mrs. Osgood, in their bill, state, that all the debts of the testator have been paid, and all legacies and bequests of his will discharged, excepting the residue of his estate, as disposed of in the 14th clause of the will, being the estate now in question; and this supposition is much strengthened by the factj that the sale was made very shortly after Mrs. Osgood took upon herself to act as executrix, and with little or no examination, into the situation or extent of the property she undertook to sell. If it was necessary or advisable, for the benefit of the estate, that these lands should be sold, Mrs. Osgood, together with the heirs or executors of Samuel and John Franklin, or, at least, of one of them, were the persons on whom the power to sell devolved, at the time the sale was made. Those interested in these lands had a right to have the judgment and advice of those persons, upon the expediency of a sale and the price to be demanded, so as to guard against their being converted, by Mrs. Osgood, to the benefit of her children, to the injury and prejudice of the other residuary devisees. "*
I have not deemed it necessary to go into an examination of .the question, whether this is a power coupled with an interest or trust, and would have survived to Mrs. Osgood, if the testator had not himself expressly provided for the event of the death of one or more of his acting executors; because I am persuaded, it is perfectly immaterial whether it be a power coupled • with an interest : trust, or a mere naked power. If there are *572 other trustees appointed by the testator, who are still living and capable of uniting in the execution of the trust, all must join, whether it be a power of the one description or of the other. That there are such other trustees living, cannot be denied. Nor have I found it necessary, particularly, to touch the question relating to the consideration paid by Clinton and Norton. It must, however, strike every one who has examined the case, that, to say the least of it, they have made an enormous profit upon the purchase, and that such profit is taken out of the pockets of their co-cestuy que trusts. Under such circumstances, every consideration of justice and equity ought to induce us to pause, before we sanction the sale, unless imperiously called upon so to do, by the most stubborn rules of law. But that no such rules of law obstruct our course, or impede the path to justice, I have the most perfect persuasion and firm conviction. Indeed, I cannot but think, that the upholding and maintaining this sale, if it can at all be done, must be by applying technical rules of law, which have in truth no application to the case, and thereby defeating the clear and obvioüs intention of the testator.
The broad and enlarged principles which govern courts of equity on the subject of Trusts, are amply sufficient to enable us to do justice to all parties, without confirming this sale, in its full extent. Mrs. Osgood was the owner, in her own right, of one eighth of the residuary estate sold by her; and so far, the deed to Clinton and Norton may be considered valid. We have before us all the parties in interest. Mr. and Mrs, Osgood, in their answer, admit that they had received the twenty-five thousand dollars from Clinton and Norton, and the object of their bill was to obtain a decree of the court of chancery, to protect them in the distribution of the trust fund among those entitled to it, under the will of Waller Franklin. Seven eighths of this fund may be decreed to be repaid to Clinton and Norton; and, for the purpose of protecting the purchasers under Clinton and Norton, all sales made by them may be confirmed, and conveyances directed to be given by proper parties; and Clinton and Norton be decreed to account to their co-cestuy que trusts for their distributive shares of the proceeds of such sales.
I am, accordingly, of opinion, that the decree of the court of chancery, so far as it confirms the sale to Clinton and Norton, ought to be reversed; and a decree entered conformably to the principles I have mentioned.
*573 Canting, Crosby, Dayton, Elmendorf, Keyes, and Livingston, Senators, were of the same opinion.
Bates, Cochran, Hascall, Hart, Prendergast, Ross, Stranahan, Stewart, Tibbits, and Van Vechten, Senators, concurred in the opinion delivered by Mr. Justice Platt.
A majority of the court* being of opinion that the decree of the court of chancery ought to be affirmed. It was, therefore, .ordered, adjudged, and decreed, that the decree of the court of chancery, appealed from in this cause, be affirmed, and that the appellants pay to the respondents their costs to be taxed, and that the record be remitted, &c.
Decree of affirmance.
The court made the following General Rule :
it is ordered, that hereafter, it shall be the duty of the appellant or plaintiff in error in this court, to deliver a copy of the opinion of the chancellor or supreme court, to each member, as an Appendix to his case, previous to the argument thereof, except where such opinion has been previously published by the. reporter.
*574 L

 April 8th j for1 affirming, 13 4 for reversing, 7=

 I1 v-h m a. 1 2 Uit'