HEARD NOVEMBER TERM, 1877.

## DeSaussure *vs.* Lyons.

Testator devised and bequeathed all the rest, residue and remainder of his estate, real and personal, to six persons by name, "my executors and executrix, as hereinafter named, and to the survivors and survivor of them, upon this special trust, and confidence, nevertheless,—that is to say, that they, my said trustees, or the survivors or survivor of them, do and shall * * * as they shall think advantageous to my estate, sell and dispose of, on such terms and conditions as they may think fit, all of such real and personal estate, and call in and receive all such debts, sum or sums of money as shall be due or owing unto me at the time of my death, and apply the proceeds thereof (and of the rents, issues and profits of said real estate until sold and disposed of as aforesaid) as hereinafter mentioned—that is to say, to invest thereout and keep invested" a sum sufficient to produce annually a specified amount, to be paid to his wife during her natural life, the residue (together with the amount so invested at the death of his wife) to be distributed as the will thereinafter directed. The six persons mentioned were in a later clause appointed executors. They all survived the testator, but three only qualified as executors: *Held,* That such three had full authority as executors to execute the power to sell the real estate. .

BEFORE REED, J., AT CHARLESTON, MARCH, 1877.

Action by Wilmot G. DeSaussure and others, as executors of Etienne Poincignon, against Thomas J. Lyons for specific perform-

ance of a contract for the sale of a lot of land in the city of Charleston.

The case is as follows:

On the 28th of February, 1876, the plaintiffs, as ·executors as aforesaid, agreed with the defendant to sell to him the said lot of land at a certain price. The defendant refused to accept the title which plaintiffs offered on the ground of an alleged defect therein. It appeared that the plaintiffs claimed under. Mrs. Bedelia L. Touhey, who held under a deed of conveyance from Mary E. Ursula Schmidt, Mary Selina Arnold and Daniel Webster Schmidt, as heirs of Dr. J. W. Schmidt, the elder, and by Ambrose C. Kingsland, Cornelius K. Sutton and Ella D. Schmidt (now Goodrich) and her husband, Frank Goodrich, executors and executrixes of the last will and testament of J. W. Schmidt, the younger, and the only objection made by the defendant was that the conveyance to Mrs. Touhey was not a valid execution by the three executors of J. W. Schmidt, the younger, of the power contained in his last will and testament. The facts as to that matter were that J. W. Schmidt, the younger, was the owner at the time of his death of one undivided fourth part of the lot in question, and that he died in New York on the        day of        , 1860, leaving a last will and testament, which provided, *inter alia*, as follows:

"*Sixth.* All the rest, residue and remainder of my estate, real and personal, wherever the same may be, and of whatsoever nature and kind, which I may possess or be in any way entitled to at the time of my decease, I give, devise and bequeath unto my friends Ambrose C. Kingsland, of New York, merchant; Cornelius K. Sutton, of the same place, merchant; Edmund S. Hamilton, of the same place, merchant; my sister, Ursula Schmidt; my wife, Mary Elizabeth Schmidt, and my daughter, Ella D. Schmidt, my executors and executrix, as hereinafter named, and to the survivors and survivor of them, upon this special trust and confidence, nevertheless,—that is to say, that they, my said trustees, or the survivors or survivor of them, do, and shall, at such time or times after my decease as they shall think advantageous to my estate, sell and dispose of, on such terms and conditions as they may think fit, all of such real and personal estate, and call in and receive all such debts, sum or sums of money as shall be due or owing unto me at the time of my death, and apply the proceeds thereof (and of the rents, issues and profits of said real estate until sold and··

disposed of as aforesaid) as hereinafter mentioned,—that is to say, to invest thereout and keep invested, upon bond and mortgage of real estate in the city or State of New York, (said mortgages not to exceed in amount two-thirds of the value of said real estate,) a sum of money sufficient to produce an annual interest or income of seven hundred and fifty dollars, and apply the said interest or income to the use of my said wife, Mary E. Schmidt, during her natural life, in satisfaction of the above mentioned annuity in her favor, and upon the further trust, after the decease of my said wife, to pay and apply the said principal sum in the same manner as the rest, residue and remainder of my estate, as hereinafter directed to be paid and applied, it being my will and intention that said principal sum, after the decease of my said wife, shall go into and form part of said rest, residue and remainder of my estate."

The sixteenth clause of the will was as follows:

"*Sixteenth.* And lastly, I hereby nominate, constitute and appoint my said trustees, the said Ambrose C. Kingsland, Cornelius K. Sutton and Edmund S. Hamilton, executors, and Ursula Schmidt, Mary Elizabeth Schmidt and Ella D. Schmidt, executrixes of this my last will and testament."

The original will was admitted to probate in New York and a copy thereof afterwards (in May, 1860,) proved in the Court of Ordinary for Charleston County, South Carolina.

Three only of the six persons named as executors by the sixteenth clause of the will qualified as executors in this State.

The lot of land belonged originally to John W. Schmidt, the elder, who devised one undivided fourth part thereof to John W. Schmidt, the younger. After the death of John W. Schmidt, the younger, his three executors who had qualified in South Carolina and the heirs of John W. Schmidt, the elder, conveyed the lot in question to Mrs. Touhey, through whom the plaintiffs derived their title.

His Honor the Circuit Judge held that the power contained in the will of John W. Schmidt, the younger, had been well executed by the conveyance to Mrs. Touhey, and he made a decree for specific performance of the contract.

The defendant appealed.

*Simons & Simons,* for appellants.

*DeSaussure,* contra.

April 13, 1878.   The opinion of the Court was delivered by

WILLARD, C. J.   The decree directs the specific performance of
a contract for the sale of land.   The question is as to the sufficiency
of the vendor's title.   This title is derived under the alleged execu-
tion of a power to sell lands contained in the will of Dr. J. W.
Schmidt, who resided in New York at the time of making his will,
and at his decease the will was proved in that State and subse-
quently proved in Charleston.   Part only of the persons named as
executors qualified in this State.   The power was executed by the
qualifying executors alone, and the question is whether it was well
executed.

The principal question is whether the power was to executors as
such.   It is contended that it is either a personal confidence in the
persons named or a power to trustees as such, and, therefore, does
not follow the office of executor so as to be capable of being exer-
cised by qualifying executors without uniting others named but not
qualifying.

The will, after making certain specific devises and bequests, de-
vises "all the rest, residue and remainder of my estate, real and
personal," to "my friends Ambrose C. Kingsland, of New York,
merchant; Cornelius K. Sutton, of the same place, merchant; Ed-
mund S. Hamilton, of the same place, merchant; my sister, Ursula
Schmidt; my wife, Mary Elizabeth Schmidt; and my daughter,
Ella D. Schmidt, my executors and executrix as hereinafter named,
and to the survivors and survivor of them, upon this special trust
and confidence, nevertheless,—that is to say, that they, my said
trustees, or the survivors or survivor of them, do and shall, at such
time or times after my decease as they think advantageous to my
estate, sell and dispose of, on such terms and conditions as they
may think fit, all of such real and personal estate, and call in and
secure all such debts, sum or sums of money as shall be due or
owing unto me at the time of my death, and apply the proceeds
thereof (and the rents, issues and profits of my real estate until
sold and disposed of as aforesaid) as hereinafter mentioned,—that
is to say, to invest thereout and keep invested, upon bond and
mortgage of real estate," &c.   The income derived from such in-
vestment, and, finally, the *corpus* itself, is disposed of by various
legacies that need not be particularly considered.   In a latter part
of the will the persons named above were nominated as executors

and executrixes. The object of the will was to mix together realty and personalty in a common fund, out of which the various pur-. poses of the will were to be satisfied. The power in question in terms embraces the collection and conversion of the personal assets as well as the conversion of the land into money. It directed the sale of lands and the investment of the proceeds of such sale, and the change of such investments from time to time.

The power to sell the realty is intimately and inseparably connected with that to call in, convert and apply the personal assets, as well by the terms used as by the devotion of the united proceeds to one common object, namely, the creation of a single fund to satisfy all the objects of the will, including that of paying debts. Although the direction to pay debts is in a separate and distinct clause from that creating the powers over realty and personalty, yet the fund out of which they are to be paid is the direct subject of the clauses creating these powers. Again, although the executors, as such, are nominated in a clause distinct and separate from that conferring the powers to sell realty and personalty, yet their duties as executors are the subject of the clauses creating these powers as well as the creation and mode of disposition of the means of performing such duties.

A stronger case for holding that the testator, in giving authority to convert the realty into money, was consciously dealing with the powers and duties of the executors, as such, can hardly be conceived. It will not be necessary to go beyond this view and examine the nature of the duties cast upon the persons named as executors, as it regards the investment of the fund created and the administration of such investments, for the present case calls in question merely the power to sell the property of the testator devised to the persons named as executors. But if that question required solution, it would be found in the fact that the personal assets as well as the proceeds of the realty entered into that common trust fund, and as the personal assets must be realized by the executors, as such, and no authority is conferred on executors, as such, to transfer such assets to others for investment, on the supposition that the trusts might come into different hands than those of the executors, it is clear that it is necessary to hold the trusts as incident of the office of executor in order to carry out the purposes of the will.

The argument against this view is derived from particular expressions in the will, supposed to indicate an intent that the persons named, both as trustees and executors, shall, as to selling the realty, exercise the office conferred by the former title and not by the latter.   In other words, that the office of trustee must be regarded as independent of and distinct from that of executor, and the power to sell the realty must be referred to that character.   Such expressions must be clear from doubt and convey an unmistakable intent in order to give rise to a conclusion obviously inconsistent with the general objects and contradictory of the general sense of the will. The fact that the persons are named in connexion with the expression " upon this special trust and confidence " is of little importance.   The office of an executor is a special trust and confidence, in the sense clearly intended by the testator, and his words can have full force consistently with the idea that the duties imposed were for executors.

Chancellor Dunkin, in *Mallet* vs. *Smith*, (6 Rich. Eq., 12,) uses the words "*personal* trust and confidence " as indicating an intention to place powers conferred by a will on higher ground than that of the ordinary duties of executors.   The word " personal " there derived particular significance from the fact that the power granted in that case was to revoke a legacy on certain contingencies.   As the subject in question, namely, revocation of legacies, as for forfeiture, was, in itself, apart from the ordinary duties of executors, describing it as a personal trust and confidence, clearly indicated that the testator did not intend to attach it to the office at large. In the present case the special trust and confidence is not declared to be " personal," and the subject-matter is clearly, in part, within the office of executor, and in all respects consistent with it.

The mere fact that the persons named are in one place called executors and another trustees, is, in itself, indecisive, and, as such, must yield to the manifest intent of the testator.   The law wisely relieves a testator from drawing nice distinctions as to the classification of official powers at a time when his mind is fully occupied with the expression of his desires and purposes, effectuating those purposes, if admissible, by appropriate means.

It is clear that the two offices cannot have separate and independent existence, for in that case the purpose of a single fund and single administration, so clearly conveyed, would be defeated.   One must, therefore, become accessory to the other and follow it as an

incident. The office of executor cannot become an incident to that of trustee, while that of trustee naturally and conveniently unites itself as an incident to that of executor. It follows that the trusteeship in the present case must be regarded as incident to the office of executor, and, as we shall presently see, following it as that office is transmitted by operation of law.

It was said by Lord Abingdon, C. B., in *Forbes* vs. *Peacock*, (11 Mees. & Wels., 630,) " that when a power is given to sell property for the purpose of either paying debts or legacies or of converting them into a residuary fund, that power must from its nature belong to the executors."

That proposition is indisputable and directly applicable to the power under consideration, which, as we have seen, lies at the foundation of all that concerns the duties of executors. It was a power coupled with an interest, or, perhaps, more accurately speaking, a power in trust, and as such the question arises whether it followed the executorship into whosesoever hands that office might fall.

Powers, in the largest sense of the term, enter into all transactions through which rights are affected in their nature or incidents; but that class of powers that involves the disposition of interests in lands has received especial attention in the adjudicated cases and has been the subject of much learned interpretation. The fundamental principle has been recognized that when one possessing dominion over lands delegates authority to others to act in his name or interest in a manner that presupposes the right of dominion to give validity to such act, the authority is to be exercised in the manner in which it was delegated and in no other. And this principle is equally applicable whether such power is to be exercised under instructions from the grantor of the power or at the discretion of the one in whom the power subsists. The application of another principle, equally fundamental, has enlarged the sphere and efficacy of such powers, and that is that an accessory should follow its principal and be moulded by it. Every power must have its object, as every act, to be rational, must have its appropriate reason. The object in view is necessarily the principal and the power the accessory, for otherwise it would be to declare that the thing done was of less importance than the mere act of doing. It follows that when the grantor of a power creates a right in a third party as against himself, and a power to support that right, such power is no longer exercised in the name or interest of its creator

but in the interest of him who holds such derived right. The right and the power that supports it may meet in the same person, and in that case it is, strictly speaking, a power coupled with an interest; or the right may reside in one person and the power in another. In this case, while the power is still coupled with an interest, yet, as the power is in one and the interest in another, the former holds the power for the use of the latter, and it may accurately be called a power in trust, or, as it is sometimes called, a power coupled with an interest in trust.

Powers of the first class, exercised wholly in the name or interest of the creator, are designated naked powers, and, following the principle first above stated, not being attached to any interest by which they can be moulded, they can only be exercised in the manner authorized by their creator. And so the authorities hold.— *Franklin* vs. *Osgood*, 4 John., 527, by Pratt, J.; *Berger* vs. *Bennett*, Caine's Cases, 15, by Kent, J.

The cases that will be presently noticed fully illustrate the principle upon which powers attached to interests take their mould from the character of such interests. It would follow that when such powers form a material part of the means placed in the hands of executors by their testator for carrying out the provisions of his will, they become blended with their duties and attached to the office of executor. But here a difficulty arose from the nature of the common law, which looks to matter of form, and can, unaided, only deal with the substantial purposes of transactions within the limits of form, for power to convert realty into personalty was not among the ordinary powers of executors, and being in form, when granted to more than one, joint powers, their legal nature could not undergo a change in that respect. As it regarded the ordinary duties of the executors, joint action was not necessary, and such as might qualify possessed all the authority conferred upon the persons named for that purpose by the will. To enable the power to be conveniently moulded in the office of executor, the statute of 21 Henry VIII, c. 4, was adopted conferring such powers upon such executors as should qualify under the will, although others nominated by the will should fail to qualify. This statute was made of force in this State.—2 Stat., 457.; *Britton* vs. *Lewis*, 8 Rich. Eq., 276; Gen. Stat., 469.

As will be seen hereafter the Courts did not confine themselves, in further conforming powers of that class to the object they were

intended to secure, to the mere exposition of the statute in relation to the cases embraced in it, but acted upon the principle that was fundamental to it. Carrying out this principle, they held that the powers to convert realty passed to and could be exercised by the survivors of several qualifying executors. This ultimate conclusion fully justifies the assertion that the legal idea of the nature of express powers subsisting in the hands of executors for the conversion of realty into personalty rests on the fundamental principle of moulding the power to conform to the nature of the office to which it is attached.

We will now look at some of the numerous cases bearing on the subject:

*Cooke* vs. *Crawford*, 36 E. C. R., 91,13 Sim.: Here was a devise to three, naming them trustees, with power to them and their survivors to sell, at their discretion, by public or private sale. One alone proved the will and entered into possession of the real estate. Shadwell, V. C., states the law to be "that when two or more persons are appointed trustees, and all of them except one renounce, the trust may be executed by that one." The case turned upon another point, not material to be examined. Nothing appears to have been said as to whether the power was to executors as such, but the rule was laid down as applicable to trustees. To that the statute of 21 Henry VIII could not apply, nor was there any difficulty in the application by the Court of Equity of the principle of moulding the power to its substantial characteristics in the case of trustee independently of the statute.

*Adams* vs. *Taunton*, 5 Madd., 435: Sir J. Leach, V. S., lays down the same rule in this case, except that in *Cooke* vs. *Crawford* renunciation was referred to, while in this case it is applied to non-acceptance merely.

*Tilden* vs. *Hide*, 1 E. C. R., 238, 2 Sim. & Stu.: Sir J. Leach, V. S., said: "Where there is a general discretion to sell, but it is not stated by whom the sale is to be made, then, if the produce of the sale is to be applied by the executors in the execution of their office, a power of sale will be implied to the executors." Such implication being possible in equity, with greater facility would that Court mould an express power created by the testator for that very purpose to suit the exigencies of the administration.

*Bentham* vs. *Wiltshire*, 4 Madd., 44: Here the same general rule was stated as in *Tilden* vs. *Hide*.

*Forbes* vs. *Peacock*, 11 Mee. & W., 636: In this case there was a devise to testator's wife for life, with power to sell in fee and invest for the general purposes of the will. The will contained the following language: "I appoint my dear wife to be my executor, and I request the favor of my good friends, John Hopton Forbes, of, &c., and Robert Cooper, of, &c., will, jointly with my aforesaid dear wife, become my executrix and trustees to this my will." Testator's wife and Forbes qualified, and the wife died, leaving Forbes sole acting. Cooper had died without qualifying. Forbes sold under the power of sale. The question of the sufficiency of Forbes's authority to sell was sent from Chancery to the Exchequer, and it was there held that such authority was sufficient. Lord Abinger, C. B., with whom Gurney, B., concurred, placed the decision of the case on the ground that it was a power to executors as such, and as such survived to the sole surviving executor. He says: "It appears to me, upon the authority of the cases cited by Mr. Parker, that where a power is given to sell property for the purpose of either paying debts or legacies, or of converting into a residuary fund, that power must from its nature belong to the executors." Rolfe, B., thought that it was to be treated as a case of implied powers, but reached the same conclusion as it regarded the authority of the sole executor to sell.

This was a strong case for holding that the power was personal in the wife, acting in concert with designated trustees, but the majority of the Court saw no difficulty in moulding it to conform to the objects which were purely administrative and for the estate at large. It shows how intimately related in principle are the rules for moulding express powers and implying them when not expressly granted.

*Putnam* vs. *Fisher*, 36 Maine, 523: In this case there was a devise to three persons appointed executors in trust; only one of the three qualified. Shepley, C. J., held that " when an estate, as in this will, is devised to executors *eo nomine* in trust, this devise is made to the official, not the individual, person, and the whole trust vests in those who accept it and become executors of the will." He also holds that when an estate is so devised, or when the executors have by the will a power to sell, coupled with an interest in trust, a conveyance by survivors, or by those who alone accept the trust, will be good. He holds that when it is made necessary to convert the realty into personalty for the purposes of the will, the executor has an implied power of sale. The sufficiency of the execution of the power was sustained.

*Treadwell* vs. *Cordis*, Gray, 341: It was held here that when three persons were made both executors and trustees under a will making settlements, two of the executors qualifying could exercise the powers conferred on trustees as well as those conferred on executors.

*Warden* vs. *Richard*, 11 Gray, 277: Shaw, C. J., says: "When the power to sell is given to executors as incident to the execution of the appropriate duties of executors, and as executors, if one declines the other may execute." This conclusion is not referred to the operation of any statute of Massachusetts such as existed in England and this State.

*Franklin* vs. *Osgood*, 14 Johns., 527: This case was heard in the Court for the correction of errors, and the leading opinion was by Platt, J. It holds that the particular expressions granting a testamentary power must be harmonized with the object of granting the power as gathered from the will at large. It also holds that the powers granted to executors for the purpose of administration are powers coupled with an interest, and, as such, subsist in the hands of a surviving executor. The doctrine of powers is very fully illustrated in this case, as well as in the opinion of Kent, J., in *Bergen* vs. *Bennett*, Caine's Cases, 15.

*Mallet* vs. *Smith*, 6 Rich. Eq., 12: No question of a power to sell realty was before the Court in this case. The question was whether power conferred on executors to revoke legacies, when the object of that power was to prevent the legatees from disputing certain dispositions made for slaves in contravention of the statutes, could be exercised when only one of the executors named qualified. The decision was put upon the ground that such authority must be regarded as conferring a strictly personal power, and, as such, did not follow or conform to the office of executors. That case was clearly one to which the statute did not extend.

It is seen from the foregoing cases that the propositions already advanced have received abundant judicial support. It must be concluded that the power of sale in the present case was well executed by the executors who qualified as such in this State, and the appeal must be dismissed.

*McIver*, A. J., and *Haskell*, A. J., concurred.