CASE No. 1041.

GEIGER v. KAIGLER.

1. In an action brought for the recovery of real property claimed by plaintiffs as devisees of G., the complaint did not charge that the defendant claimed under G. Defendant's answer denied title in plaintiffs, and claimed the property under a contract to purchase made by the executor of G. under a power in the will, and the payment of the purchase money. *Held,* that this admission was the narrative of a single transaction, and if used by plaintiffs to show that both parties claimed under G., a common source, it must be taken as a whole.

2. In an action for the recovery of land upon the ground of title, plaintiff can recover only upon a perfect chain of title, unless there be a common source, or defendant is estopped from denying plaintiff's title, as, *e. g.*, in case of landlord and tenant.

3. In an action to try the titles to real property, mere prior possession by plaintiffs, even if by descent cast, will not dispense with the necessity of proof of their title.

4. The several actions of ejectment, trespass to try title, &c., considered, and cases reviewed.

5. A will taken as a whole showed an intention that the executor should have the possession of the entire estate, and full power was given him to sell any part of it; under this power the executor made sale of a tract of testator's land. *Held*, that the plaintiffs claiming as devisees, could not maintain an action at law against the purchaser, for the recovery of this tract of land.

6. Possession of this tract of land under a contract of sale, made with the executor under this power, and payment of the purchase money, is a good equitable defence to an action brought by these plaintiffs for possession.

Before WALLACE, J., Richland, July, 1879.

Action by Caroline J. Geiger, Isabella C. Geiger, Juriah E. Geiger, John A. Geiger and Frederick Ann Geiger against George Kaigler.

It does not appear when the action was commenced; the brief says "it was begun by summons and conplaint." The complaint states that Henry J. Geiger, the son of testator, died under age and unmarried, and that Alexander Geiger, the executor, died in 1868. The case is fully stated in the opinion.

*Mr. J. D. Pope* for appellants.

The fee rests in the appellants as heirs-at-law, or as devisees under their father's will, and not in the executor, who is given neither an estate nor any beneficial interest in the realty. The fee passed to the children, whether they be devisees or heirs-at-law, subject to the exercise of a power given to the executor. Couple the fourth clause of the will with the third, and we have the true relation of Alexander Geiger to the children—that of testamentary or statutory guardian of their persons and estate. 3 *Stat.* 707; 2 *Kent* 225; *Bac. Ab., tit. "A,"* 3; *McPher. on Inf.* 91. Alexander took no fee in the lands. 4 *Kent* 320, notes; 2 *Dev. & Bat.* 439; 1 *Tread. Const. R.* 106; 1 *Wms. on Ex'rs* 579; 1 *Sugd. on Pow., ch. III.,* 129, *et seq.* He took a naked power and could sell, strictly because of the appointment to sell. Plaintiffs proved the will and established their title, identified living parties and the *locus in quo*, proved the death of others, and rested. Defendant sets up a simple defence, equitable in its

nature, that the executor exercised the power in the will, received bond for titles, and paid the price. Of all this there was no proof, and yet a non-suit. The answer pleads the statute of limitations. We could prove the infancy of some of the co-tenants. From the complaint and answer, it appears that plaintiffs and defendant claim from the same source; defendant thereby admits the title of Henry Geiger to be good. 4 *Rich.* 558; 1 *Strob.* 1. If defendant proves title from Henry Geiger, plaintiffs are estopped, or, he might, in the Court of Equity, set up equities, which, if proved, would cause the court to enjoin. These equities may now be set up by answer, as a defence to plaintiffs' action at law, but defendant must prove them. 5 *Rich. Eq.* 15; *Adams' Eq.* 363, notes; 11 *How.* 131; 3 *Greenl. on Ev.*, § 281; *Dyer* 108; 12 *Pet.* 178. The case of *McCaw.* v. *Blewit*, 2 *McC. Ch.* 90, is to the contrary, but has long since been declared not to be law. The avoidance must be proved. 2 *Johns. Ch.* 88. *Carrier* v. *Hague*, 9 *S. C.* 455, is not in point. The answer was construed to be a general denial, and if taken in any other sense must be used as *evidence.* The non-suit was erroneous.

*Mr. Louis Le Conte,* contra.

June 10, 1881. The opinion of the court was delivered by

McGOWAN, A. J. This was an action for the possession of a tract of land (Chappell) in Richland county. The complaint states that Henry J. Geiger, the elder, died in October, 1858, seized and possessed of the land, and that he left a will, of which Alexander Geiger was appointed executor, and in which the plaintiffs, his only children, were named as the beneficiaries. That the defendant, George Kaigler, acquired possession of the land sued for some time in the year 1863, and held in some way under Alexander Geiger, who died in 1868.

The defendant answered, making three defences.

1. He denied the alleged seizin of the father, Henry J. Geiger, at the time of his death—admitted death of Henry J. Geiger—that he left a will, of which Alexander Geiger was appointed executor, but he denied that the plaintiffs are entitled to

any *legal estate* in the lands of said testator, and submits it to the decision of the court upon reading of said will; admits that he acquired the possession during the year 1863, but denies that he held "in any manner under the said Alexander Geiger or any one whomsoever."

2. That the premises were devised to the said Alexander Geiger, as executor, with full power to sell and convey the same; that the said Alexander, on October 22d, 1863, bargained and sold the said premises to the defendant, (receiving from defendant a full and ample price therefor), and executed to this defendant a bond for title, and delivered to him a plat of survey of said land; that the defendant entered upon said lands under color of the aforesaid bond and plat as a purchaser of the land, claiming the same in his own right exclusively in fee simple, and that he has ever since held possession of the same under such exclusive claim.

3. *The statute of limitations.*

The will of Henry J. Geiger was read in evidence, which is as follows:

STATE OF SOUTH CAROLINA, LEXINGTON DISTRICT.

In the name of God, Amen! I, Henry J. Geiger, of the state and district aforesaid, being sick and weak of body, but of sound and disposing mind, memory and understanding—praise be to God for the same—do make and declare this my last will and testament, in manner and form following, that is to say: I do hereby nominate and appoint my only brother, Alexander Geiger, now living in the State of Alabama, the sole executor of this my last will and testament, hereby revoking and making void all former wills and testaments at any time heretofore by me made, and do declare this to be my last will and testament. I appoint that my aforesaid executor shall make the following disposal of my property:

*First.* That he shall pay all my just and lawful debts.

*Secondly.* That he shall take charge of all my effects and make such disposition of them as he, in his judgment, shall deem proper.

*Thirdly.* I do declare that my only concern being for the wel-

fare of my children, I therefore request him to take my three eldest daughters, Caroline Juriah, Isabella Charlotte, and Juriah Elizabeth, to some retired mountainous part of the country where they may be educated and reared in industrious habits—that by no means they be educated in a city or town—my object being to keep them out of circles of fashionable society. And I request him to take my two sons, John A. Geiger and Henry J. Geiger, and my youngest daughter, Frederick Ann Geiger, to live with him wherever he may reside until they are ten years of age, and, after that age, to place them at school in some retired part of the country.

*Fourthly.* I appoint that he dispose of as much of my real estate as may be necessary to carry into effect the above-mentioned requests, and that the remainder be retained in his possession until any one of the above-named heirs may be disposed to settle, and that he then make an equal division of the said estate among them.

*Fifthly.* I request him that when the estate of my father-in-law, John Kaigler, deceased, is settled up, that he take charge of so much of the said estate as will fall to me in right of my wife, Charlotte, John Kaigler's daughter, and that he make such disposition of it as shall be, in his judgment, beneficial to the interest of my children.

*Sixthly.* Inasmuch as I was appointed by my mother executor of her estate, in behalf of my children, and she gave a portion of her effects to my children, I request him to take charge of the same and manage it for their benefit.

*Seventhly.* I request that whatever (besides the above-named property) there may be belonging to me, and not mentioned in this will, that he take charge of the same and manage it in the same manner in which he is directed in regard to the other property.

Given under my hand and seal, signed and sealed this the 2d October, in the year of our Lord one thousand eight hundred and fifty-eight, and in the eighty-second year of the Independence of the United States of America.

HENRY J. GEIGER. [L. S.]

In the presence of William J. Ligon, William Henry Baker, John Gates, John H. Arthur.

There was very little oral testimony. Nothing was proved concerning the land in question but the following:

John A. Arthur said: " Not acquainted with the land in question. * * * To the best of my recollection, at the time of Geiger's death, Davis was in * * * Knew that Mr. Davis' overseer, Loomis, came to pay Geiger, and renewed lease of land in question to Davis."

John A. Geiger said: " Reasonable rent of land in question, per annum, is about twenty bales of cotton, or $600 or $800."

Westley Horsey: " Knew land in question ; land certainly worth two years' rent to clear it," &c.

The case turned mostly on the will and the pleadings. At the close of plaintiff's testimony the defendant moved for a nonsuit upon the following grounds :

" 1. That there was not sufficient evidence of plaintiff's title to go to the jury unless defendant's answer be taken as part thereof, which showed purchase and payment by defendant from the executor in pursuance of the power conferred by the will of the testator.

" 2. The plaintiffs derived no legal estate in the premises under the will of the testator, but that the same vested the legal estate in fee in the executor.

" 3. That under the statute of limitations the action was barred."

Judge Wallace granted the nonsuit upon the ground " that the will of the testator, Henry J. Geiger, conferred upon his executor, Alexander Geiger, a power coupled with a trust, and the executor having made the sale of the premises thereunder and received the purchase money, whereby a complete equitable title appeared in defendant."

The plaintiffs excepted to the order, and appeal to this court to set aside the nonsuit and for a new trial.

In order to have a clear view of the questions it is necessary to determine at the outset what force and effect the answer of the defendant should have as evidence.

Defendant's attorney says that " by common consent that part of the answer which set up the affirmative defence of purchase

from Alexander Geiger was considered to be before the court, although not otherwise put in evidence."

Plaintiff's attorney says: " The complaint and *the answer* show that plaintiffs and defendant derive title from the same source," but denies that the answer is evidence of any other statement in it. The answer is simply a pleading. " The allegations of new matter in an answer (not relating to a counter-claim) is to be deemed controverted by the adverse party as upon direct denial or avoidance, as the case may be." *Code*, § 191.

The statement of the second defence in this answer was new matter, which was not proved *aliunde*, and the plaintiffs propose to use one part, stated as an admission, viz., that the defendant claimed from the executor of Henry J. Geiger, but deny to all its other statements the force of evidence.

The answer of defendant in the *second defence* did make such a statement, but, at the same time and in the same connection it further stated that he paid in full for the land and had the executor's bond for title under his power in the will to sell. This was but a narrative of one transaction, of which the plaintiffs propose to use only a part. The statement was a unity, and could not be divided. If the answer was used as evidence, it was subject to the ordinary rules of documentary evidence.

" The pleadings leave upon the plaintiff the *onus probandi*, and the allegations of the answer are but a proffer of the points upon which defendant relies. Prior to the opening of the defence the plaintiff resorts to the answer, and produces it as evidence in his behalf. He must take it as it stands, and cannot be permitted to carve out a part and reject the residue which qualifies, explains or pertains to the portions selected. The whole answer should have been admitted as evidence so far as it explains or qualifies, or is properly connected with the portions relied on by plaintiff." *Carrier* v. *Hague*, 9 *S. C.* 459; *Cohen* v. *Robert* 2 *Strob.* 415.

*How stands the matter, then, in the view that the answer was not in evidence?* In that case the second defence must be considered as stricken out, as outside of the answer there was no proof of the facts on which it rests. The action being for the recovery of the land, upon the ground that the plaintiffs have the legal title, and the

defendant having denied plaintiffs' title, it was necessary that they should recover upon the strength of their own title—that is to say, it was incumbent upon them to prove title in their father, Henry J. Geiger, through whom they claimed. This doctrine was firmly established in South Carolina by an unbroken current of decisions running certainly down to the adoption of the code of procedure, from the case of *Drayton* v. *Marshall*, 1 *Mill Const. R.* 184, (1817), in which Judge Cheves said: "It was necessary for the plaintiff to prove a perfect title, unless the defendant held under him or under those from whom the plaintiff derives his title." As we understand it, this is the generally received doctrine in actions for the recovery of the possession of lands when the plaintiff rests his right to recover upon his title. Mr. Tyler says: "The party claiming the right to lands must recover, if at all, on the strength of his own title, and not on the defects in that of his adversary. This is an elementary principle in the action of ejectment, and it has been reiterated over and over again by the courts. The claimant in the action will not be assisted by the weakness of the defendant's claim, because the possession of the latter gives him a right against every person who cannot establish a title. This is the general rule, in respect to which there is no exception, and it has been established by a world of authorities, both in this country and in England. The party who would change the possession must make out a title, upon the strength of which he must recover, if at all." *Tyler on Eject.* 72, and many authorities.

To this rule there are several well-established exceptions, in which, from the operation of familiar principles, it is considered unnecessary for the plaintiff to prove a perfect chain of title; as, for example, when the plaintiff can bring the defendant into privity with his title, by showing that the parties claim from *a common source*. *Martin* v. *Ranlett*, 5 *Rich.* 541; *Hill* v. *Robertson*, 1 *Strob.* 1. Or when it can be shown that the defendant's possession was acquired in such manner as to estop him from denying plaintiff's title, as in case of landlord and tenant. Beyond these exceptions we know of no others in actions for the recovery of land upon the ground of title. Of course we do not

speak of actions of trespass *quare clausum fregit*, which are brought simply for damages to the possession.

It is urged for the plaintiffs that they claim title under their father, Henry J. Geiger, and should not have been required to prove title, for the reason that the defendant also claims under Henry J. Geiger, and, consequently, are within the exception as to tracing title to *a common source.* The point was well taken if sustained by the proof. What is the evidence upon this subject?

The complaint does not charge that the defendant went into possession under Henry J. Geiger, but states that "the said George Kaigler acquired possession of the land some time in the year 1863, and held in *some way* under Alexander Geiger." It is true that Alexander Geiger was the executor of the will of Henry J. Geiger, but the above does not charge that the defendant went in under him *as executor.* The defendant made no admission in his answer. Omitting in this connection his statement in the *second defence*, (which, according to our present view, is not in evidence,) he denied "that he held under Alexander Geiger or any one whomsoever." Outside of the pleadings there was no proof whatever as to how the defendant went into possession, and therefore the claim that the parties trace title *to the same source*, as a matter of fact, was not made out.

But it is insisted that to the rule that the plaintiff can recover only upon the strength of his own title, there is another exception, viz., that without regard to title the party showing the *prior possession* should be held to have the better right and allowed to recover; that *prior possession* as against the defendant, should be held to stand in the place of title. The modification here contended for is thus stated by Mr. Tyler: "When the owner of the true title neither objects nor consents to the possession of either party, the court regards the better right as between the parties to be vested in the first possessor and grantees claiming through him." *Tyler on Eject.* 72; *Smith* v. *Lorillard*, 10 *Johns.* 339, and other authorities.

These authorities seem to indicate that there may be some such rule where the old action of ejectment, pure and simple, is still retained as the means of recovering lands.

The action of ejectment was a possessory proceeding—possession being the gist of the action—and did not necessarily decide the question of title. Originally there were several actions in relation to land. The object of the old *writ of right* was to try the title; that of ejectment, writ of entry and of assize, originally, was to recover the possession, and the action of the mesne profits was for rents and profits for its detention. The writ of right went to the root of the matter, and after issue once joined, the judgment was absolutely final, so that a recovery had could be pleaded in bar of any other claim or demand. Not so as to an action of ejectment. In that action, even after it became a mixed action, and was used to try title, the unsuccessful party might re-try the same question as often as he pleased without leave of the court, for, by making a fresh demise to another nominal character, it became the action of a new plaintiff upon another right, and the courts of law could not any further prevent this repetition of the action than by ordering the proceedings in ejectment to be stayed until the costs of a former ejectment were discharged. 3 *Bla. Com.* 305, note. By our act of 1744 the parties were limited to a *second* action, provided it was brought within two years. 3 *Stat.* 612. Our action of *trespass to try title* under the act of 1791, which was of force down to the time of the adoption of the code (1870), was not identical in all respects with an action of ejectment. The act of 1791 provided as follows: " Whereas, since the disuse of real actions, the common method of trying the title to lands has been by action of ejectment, which, depending upon a variety of legal fictions, is rarely understood but by professors of the law; in order to render more plain the mode of trying the title to lands in this state: *Be it enacted, &c.,* That the method of *trying the title to lands* or tenements within this state, shall, henceforth, be by action of *trespass,* wherein the real name of the plaintiff and defendant shall be used, and not fictitious names; and if the jury shall find for the plaintiff, they are also hereby empowered, in the same verdict, to accord damages for mesne profits, and the judgment shall be entered on such verdict, as well for the damages as for the recovery of the land; and the plaintiff on such verdict shall be entitled to a writ of possession for the land and

to an execution for his damages." 5 *Stat.* 170. It is also provided that in actions of trespass brought to try the title to land the plaintiff or his attorney shall always endorse on the original and copy writ that "*the action is brought to try titles as well as for damages.*" 7 *Stat.* 276.

This statutory action combined in itself the action for mesne profits in the form of damages, with as much of the old *writ of right* as put the title in issue. This is apparent from the endorsement required to be placed on the writ, "that this action is brought to try the title as well as for damages," also from the force given to the judgment, which, like a judgment in the writ of right, could be pleaded in bar to another action. *Thomas* v. *Geiger*, 2 *N. & McC.* 528; *Tyler on Eject.* 807. And, also, because a defendant in possession could defend himself by showing title in a third person. *Faysoux* v. *Prather*, 1 *N. & McC.* 296. From this essential difference in the action of ejectment and our action of trespass to try title, it would seem to be a strained conclusion that, because in ejectment presumption from possession was allowed in certain cases to stand for title, the same should be allowed in an action of trespass to try titles, the very object of which was to try the title, and in which the judgment was conclusive. We think the cases in our reports, considered together, sustain the view that the two actions were not in all respects the same.

It is true that Judge Nott, in *Kennedy* v. *Campbell*, 3 *Brev.* 553, (1816,) said: "Our act of assembly substituting the action of trespass for the old action of ejectment, merely adopts a new mode of proceeding, but does not alter any of the principles of law relating to the subject. It would be productive of the most mischievous consequences if a contrary construction should be given to the act." The only question in that case was, whether a landlord had the right to come in and defend an action of trespass to try titles brought against his tenant. Considered in reference to the subject matter, the statement of the judge was perfectly correct, but, as a general proposition, it was unnecessarily broad.

In the case of *Young* v. *Watson*, 1 *McM.* 449, (1839,) relied upon by the plaintiffs, Judge Earle says: "The plaintiff, it is

admitted, made out no title; and the defendant is not proved to be a disseizor. The endorsement which the plaintiff is required to make on his writ *gives character to this action*, which is to try the titles. I have not heard it doubted that in such case the plaintiff, when there has been no tortious eviction, could only recover on proof of good title. A plaintiff can only make out a perfect title by producing a grant, or by proving such a possession as will give title in himself or in some one from whom he derives title." What Judge O'Neall says in the same case most probably had reference to an action of *quare clausum fregit.* "When the plaintiff's possession, actual or constructive, is entered upon, I think that such possession is evidence of title to put the defendant to prove his title."

In the case of *Watson* v. *Hill*, 1 *Strob.* 79, (1846,) it was held that trespass to try titles would lie by one in possession against one who enters upon land and commits a trespass. Judge O'Neall says: "In such case I have always supposed that the plaintiff had his choice to bring trespass *quare clausum fregit* or trespass to try title. In the former he would have the advantage of standing on his possession and throwing upon the defendant the burden of showing a paramount title; in the other, he waives this advantage and takes upon himself the burden of showing title. * * * The action of trespass proceeds upon the notion that defendant had entered upon the possession of the plaintiff. When the plaintiff shows *actual possession*, it may be, *perhaps*, in trespass to try the title, *prima facie* enough to entitle him to recover."

The cases of *McColman* v. *Wilkes*, 3 *Strob.* 465, and of *Cleveland* v. *Jones*, *Id.* 479, in note, were actions of trespass *quare clausum fregit*, which action is founded on the *plaintiff's possession*, and will always lie when there has been a disseizin.

We conclude that in the action of trespass to try title under our statute, *mere prior possession* would not dispense with the necessity that the plaintiff should prove title to enable him to recover.

The act of 1791, so far as it prescribed the form of proceeding, was superseded by the code, which abolished all the different forms of action and substituted one form for all causes

S

of action. And it may be that in the general form of action of the code the means are given to enable a person to recover *the possession* of land seized by a mere trespasser as well as to try the title itself. But it is unnecessary to consider that question in this case.

This action was brought, as stated, expressly to recover the land in dispute, upon the ground that the plaintiffs had title to the same; and even if the old rule as to the necessity of proving title should now be held to be modified so as to allow a person deprived of the possession of land, under proper allegations, to recover that possession without proof of title, it can have no application to this case. *Here prior possession* cannot stand for title, although it is an action in the form prescribed by the code and not technically trespass to try title under the statute. The plaintiffs staked themselves upon their title, and they must recover, if at all, upon the strength of this title.

It cannot alter the case that the plaintiffs claim to have possession under their father by descent cast, according to the old doctrine that the "law presumes the possession transmitted from the ancestor to the heir to be a rightful possession until the contrary is shown, and, therefore, the mere entry of him who has the right will not be allowed to evict the heir." This has been changed by Section 110 of the code of procedure, which declares that "the right of a person to the possession of any real property shall not be impaired or affected by a descent being cast in consequence of the death of a person in possession of such property."

The plaintiffs having failed to bring themselves within the exception as *to a common source of title*, it was incumbent on them to make proof of the title of their ancestor, which they failed to do. The proof even of the possession of Henry J. Geiger was meagre, and, therefore, as to the *first legal* defence, considered as separate and distinct from the second, they failed to make the proof necessary to recover the land.

*Upon the view that the answer was in evidence*, the admissions of the defendant did establish the fact that he entered under a purchase from Alexander Geiger, as executor of Henry J. Geiger, the ancestor of plaintiffs, and therefore traced title to a com-

mon source with the plaintiffs. That relieved the difficulty which existed as to the first defence; but the allegation of new matter, which came in along with the admission, viz., that the defendant purchased the land from Alexander Geiger, as executor of Henry J. Geiger, under the power of sale in the will of the latter, paid full price for the same and received from him possession, bond for titles, and plat of the premises, raises new questions.

1. What interest in the land did the will give to Alexander Geiger? A power coupled with an interest or a mere naked power to sell?

2. Was the sale by Alexander Geiger, under the circumstances stated, an execution of the power so as to vest in the defendant a good, equitable title?

The question as to what interest the will gave Alexander Geiger is one of *intention*, to be ascertained from its construction. 2 *Washb. on Real Prop.* 605. "A reference to the terms of the will is the only course by which to determine whether a *naked power* only is intended to be given, for even if the terms made use of in creating the power, detached from other portions of the will, confer merely a naked power to sell, yet if the other provisions of the will evince a design that, at all events, the lands are to be sold *in order to satisfy the whole intent of the will*, it is not a naked power, but is coupled with a trust and interest." *Franklin* v. *Osgood,* 14 *Johns.* 527. "A power to sell for the payment of debts would be such a power." *Sugd. on Powers* 111, note. "One test that is given in some of the cases for distinguishing a naked power from one coupled with an interest, is whether the donee of the power is *to have possession* of that to which the power relates. If he is, he is considered to have an interest, otherwise a mere naked power." 2 *Washb. on Real Prop.* 606.

Although this testator did not use the technical terms usually employed in disposing of property *in trust,* yet, taking the whole will together, we think that he intended to give *at least the possession* of the whole of his estate, real and personal, to his brother, Alexander Geiger, *in trust* for the performance of the various duties imposed upon him in relation both to his property and

his children. He gave nothing directly to his children, but, on the contrary, placed them under the exclusive control of his brother Alexander, with very peculiar and confidential instructions to take the sons and youngest daughter to his own home, and educate the other daughters in some retired mountainous part of the country out of the circles of fashionable society. He did not intend to die intestate as to any of his property. The residuary clause of the will is not only evidence that such was not his intention, but provides against such a result. Every direction of the will proceeds on the assumption that the property was in the possession of his executor and at *his disposal.* " The executor shall make the following ' *disposal of my property,*' ' *pay my debts,*' ' take charge of my effects,' ' dispose of so much of my *real estate* as may be necessary, *and the remainder* to be *retained in his possession* until any of the above-named heirs may be disposed *to settle,* and that he then make an equal *division of the said estate among them,*" &c., and then the residuary clause giving " the property not mentioned in the will." We cannot resist the conclusion that it was the intention of the testator to give at *least the possession* of the whole estate to the executor in trust for the uses and purposes therein declared. Whether the provision in regard to the division among his children of so much of his real estate as was not required to be sold in order to carry out the injunctions placed upon his executor, was, in effect, a devise to them or not, there is no doubt that he intended to give at *least the possession of all the land* to his executor, Alexander Geiger. If the plaintiffs, as contended, have the *legal title,* it is clear that they never *had* either the actual possession or the *right to possession of the land* sued for, and that alone would be conclusive that they have not the right to maintain an action at law to recover the same. A plaintiff in an action for possession of real property cannot recover unless he has not only the title but the right to immediate possession. " In an action of ejectment the question to be tried is the *plaintiff's right to possession* of the premises sued for, and, upon the trial of the general issue, the defendant may avail himself of a defence that the plaintiff had not the present right of possession." *Tyler on Eject.* 738 ; *Carter* v. *Scaggs,* 38 *Mo.* 302. This leads to the conclusion that

the plaintiffs have not the legal right as the heirs or devisees of Henry J. Geiger to maintain *now* an action at law for the recovery of the land. Any rights which they have are equitable in their character and must be set up through the forms appropriate to equitable proceedings.

The second defence, if true, makes out a good, equitable defence. Mr. Tyler (p. 738) states that "law and equity being now blended, an equitable title arising out of a contract for the sale of land, is a defence to an action of ejectment instituted to recover possession of the land. Possession of land under a contract of sale and payment of the purchase money, is held to be a good defence to an action brought by the alienor for the possession."

But the court having taken the view that the plaintiffs have not the right to immediate possession so as to enable them to maintain an action at law for the land, it is unnecessary to consider the question whether the alleged sale of the land to the defendant, Alexander Geiger, was a valid contract, in execution of the powers of the will. There was no evidence upon the subject except the answer of defendant, and to make any ruling upon his *ex parte* statement might do injustice to the plaintiffs.

The judgment of this court is that the judgment of the Circuit Court be affirmed.

SIMPSON, C. J., and McIVER, A. J., concurred.