FREDERICK P. JAMES, APPELLANT AND RESPONDENT, *v.* JAMES A. COWING, APPELLANT, AND THE NEW YORK ELEVATED RAILROAD COMPANY, RESPONDENT.

*Mortgage— duty under, of trustee for bondholders — when a trustee is personally liable for a conveyance made in violation of the mortgage — when a purchaser is bound by the trust.*

A mortgage executed to secure bonds issued by a railroad provided that, in case of any judicial foreclosure sale or other sale of the premises, the trustees should, upon the request of a majority of the bondholders, purchase the premises, and that no bondholder should have any claim upon the premises or the proceeds thereof, except for his *pro rata* share of the proceeds as represented in a new company or corporation to be formed for the use and benefit of the bondholders. The trustees were authorized to organize such new company and reconvey the premises to it. The sole trustee having foreclosed the mortgage was, by an order of the court, directed to bid upon the sale for the benefit of the bond-

holders up to $750,000. He did so, and accepted a conveyance " as trustee for the benefit of all the holders of the bonds secured by the mortgage foreclosed in said action." He gave a receipt to the referee who conducted the sale acknowledging the receipt of $734,518.84.

Subsequently and after issuing a circular requesting suggestions as to the time and manner of selling the premises, and upon the request of a majority of the bondholders, the trustee sold the same at public auction to The New York Elevated Railroad Company for $100,000. Many of the incorporators of the latter company, were not holders of the bonds of the first company.

The plaintiff, a holder of bonds issued by the first company, claiming that the sale by the trustee was in violation of the trust imposed by the mortgage, brought this action to recover his proportionate share of the proceeds of the foreclosure sale from the trustee, and also to hold the New York Elevated Railroad liable therefor.

*Held,* that the trustee was required, by the mortgage, to organize a new company composed exclusively of the former bondholders, and that the sale by him at auction was unauthorized and a violation of the trust.

That having made the sale without applying to the court for authority so to do, he was personally liable for any damage to the bondholders occasioned thereby.

That the trustee was under the circumstances estopped from denying that he had received from the referee $734,518.84.

That the New York Elevated Railroad Company, having purchased from the trustee with knowledge of the terms of the trust created by the mortgage, took the property subject to all the terms and burdens thereof, though it paid a valuable consideration therefor.

APPEAL from a judgment entered upon the trial of this action by the court, without a jury, in favor of the plaintiff as against the defendant Cowing and against the plaintiff, and in favor of the defendant, The New York Elevated Railroad Company.

The action was brought to recover the amount of certain first mortgage bonds issued by the West Side Elevated Patented Railroad Company, secured by a mortgage of the property of said company given to the defendant Cowing, as trustee, and by him in alleged violation of his trust, conveyed to the defendants, The New York Elevated Railroad Company.

*Abram Wakeman,* for the plaintiff, appellant and respondent.

*David Dudley Field,* for the defendants, appellant and respondent.

BRADY, J. :

The learned justice in the court below found the following facts and conclusions of law :

## FACTS.

I. In the year 1868 the West Side Elevated Patented Railway Company was incorporated in the city of New York, under the general railroad laws of the State, with a board of seven directors and other proper officers, and with an authorized capital of $5,000,000 for the purpose of constructing and operating an elevated railway in the city of New York, from the Battery through Greenwich street and the Ninth avenue to Harlem river.

II. Prior to the 1st of August, 1868, the said company had proceeded to carry out the objects of its incorporation. It had taken possession of and used the franchises and the rights and privileges over the lands and premises described in its charter of incorporation, or over a part thereof, and had erected an elevated iron railway through Greenwich street from the Battery to Courtlandt street in the city of New York, which had been approved by the State authorities as required by law, and a continuation of said railway was being then made or projected under said franchise to the northerly line of Manhattan Island.

III. On the said 1st day of August, 1868, the said company executed and delivered to George S. Coe and James H. Benedict, as trustees, the mortgage deed of trust of their railway, mentioned in the complaint, and whereof a copy is thereto annexed, as security for the payment of the 1,500 bonds of the said company, therein mentioned and described. The said mortgage was duly executed by both parties thereto, and the same was recorded in the office of the register of the city and county of New York, in liber 870 of mortgages, page 355, October 20, 1868.

IV. The company thereupon issued the bonds mentioned in the mortgage to the amount of $750,000, to wit: 1,500 bonds of $500 each; forty-five of which bonds being those numbered 29, 100 to 119, 221 to 240, and 336 to 339, all inclusive, amounting in face value to $22,500, were issued and delivered to the plaintiff, who has ever since remained, and still is the owner and holder of the same; and the same have not been paid to the company.

V. On the 3d of January, 1871, a suit was commenced in the Supreme Court by William S. Woodward, David Dows, John F.

Tracy, and William L. Scott (then actually constituting a majority of the board of directors), against the West Side and Yonkers Patent Railway Company, otherwise called the West Side Elevated (Patented) Railway Company (of New York city), for the recovery of the amount of advances and loans made by the plaintiffs in said suit to said railway company and interest thereon, and on the 24th of January, 1870, judgment was entered therein by default against the company for $214,405.93.

VI. Messrs. Coe and Benedict, the trustees under the first mortgage, in the month of July, 1871, resigned as such trustees, and on the twenty-fifth of the same month the defendant, James A. Cowing, was appointed sole trustee in their place. On the first of August following, he accepted the trust.

The signatures to the necessary notices and papers evidencing their proceedings were all acknowledged on the 9th of August, 1871.

VII. On the same 9th of August, 1871, David Dows, John F. Tracy and William L. Scott, claiming to be owners and holders of $100,000 and upwards of the first mortgage bonds of the said railway company, requested Mr. Cowing, the new trustee, in writing, to foreclose said mortgage, agreeing to indemnify him against all costs and expenses of foreclosure, and all damages he might suffer by compliance with their request.

VIII. On the next day, August 10, 1871, Mr. Cowing as such trustee commenced an action for the foreclosure of the first mortgage in the Superior Court of the city of New York. On the seventh day of September following judgment of foreclosure and sale was entered, and J. C. Bushnell was appointed referee to make the sale, who advertised the sale for the 5th of October, 1871.

IX. Pending this advertisement, Mr. James, the plaintiff in this suit who until then was ignorant of the foreclosure and the proceedings therein, claiming that his interests as a stockholder of the company as well as a bondholder of the bonds secured by the mortgage were jeopardized, applied to the court, and obtained a stay of proceedings and an order directing a postponement of the sale, to enable him to protect such interests; subsequently, upon a hearing of the parties, on the fifth October, and after nego-

tiation and adjustment and agreement between the parties, an order was entered vacating the stay, and directing Cowing, the trustee on the sale, to bid for the premises, as trustee, for the benefit of all the bondholders of the bonds secured by the mortgage up to the sum of $750,000.

On the same day the referee executed and delivered to Mr. Cowing, and he received and accepted a deed, " as trustee, for the benefit of all the holders of the bonds secured by the mortgage foreclosed in said action."

The sum bid on this sale, as sworn to by the defendant in his answer, and as shown by the report of the referee who made the sale, and by the receipts and vouchers thereto annexed, was actually paid, and the net proceeds thereof, after payments of costs and expenses, being the sum of $734,518.84 was paid over to and received by said Cowing as such trustee, and for which he gave the referee his receipts acknowledging the same.

X. A suit had also been instituted in the court of Common Pleas by Mr. Cowing to foreclose the third mortgage of May 9, 1871, judgment obtained therein on 22d August, 1871, and the property advertised for sale for the 2nd day of October, 1871.

XI. The agreement above referred to of October 5, 1871, and upon which the order above mentioned of that date was made, embraced also a provision for the vacation of the stay of proceedings on the foreclosure in the Court of Common Pleas, and a consequent discontinuance of the action therein commenced by Mr. James, which was afterwards consummated by a stipulation in writing signed by the parties in interest, or their attorneys claiming to act as such, a copy whereof is annexed to the complaint.

XII. On the first of November, 1871, a circular was mailed by Cowing, the trustee, addressed to the bondholders, stating the foreclosure proceedings and sale under the mortgage of August 1, 1868 ; that the title and possession of the property were in him as trustee, with power to hold and convey the same for the benefit of all the holders of the first mortgage bonds, and inviting suggestions as to the time and manner of selling the same.

Several of the parties (not including the plaintiff in this suit), claiming to be holders of a majority of the bonds, united in a request to Cowing the trustee, dated November 15, 1871, authoriz-

ing him to advertise and sell at public auction, for cash, the said road, appurtenances, rights and franchises, and all other property acquired by him as purchaser on the foreclosure sale. The plaintiff made no suggestions as to the disposition of the property.

XIII. In pursuance of this request the road and property were advertised and sold at publc auction on 2d of January, 1872, at which it was bid off by David Dows in the name of the New York Elevated Railroad Company for $100,000.

On the same day Cowing, as trustee, executed and delivered to the New York Elevated Railroad Company a conveyance of the property.

XIV. The company thus named had been organized under the general law providing for the formation of railroad companies by the defendant Cowing and others, many of whom were not holders of the first mortgage bonds of the original company.

XV. The plaintiff took no part in this new organization, expressly declining to do so, on the ground it was not such an organization as was contemplated by the terms of the trust in the mortgage, and not such as was contemplated and intended by the terms of the stipulation entered into by him of the 5th October, and the 10th November, 1871.

XVI. Upon the sum of $100,000, the consideration expressed in the above conveyance to the new company, a cash dividend of $59.62 was finally declared by Cowing, the trustee, upon each of said first mortgage bonds. Several of the bondholders purchased stock in the new company, for which their bonds were received as part payment, according to their dividend values as above declared, and which the plaintiff has declined or refused to accept.

XVII. In the course of all these proceedings Cowing, the trustee, failed and neglected to apply to or take instructions and directions from the court, as under the circumstances of the case, he was in duty bound to do, and in the steps he took assumed a responsibility in direct violation of, because not authorized by the trust.

XVIII. The defendant Cowing, the trustee, commenced operating the said road immediately on his taking possession thereof under the third mortgage, and continued so to do to the time of the sale and conveyance by him to the defendants, the New York

Elevated Railroad Company, and thereafter continued its operation under that corporation, in whose employ as an officer he at once entered and still continues.

XIX. The value of the said property in the hands of the said trustee, and of the said New York Elevated Railroad Company was, and is an amount more than sufficient to pay all the bonds secured by said first mortgage, together with the interest, costs and expenses thereon.

## CONCLUSIONS OF LAW.

And I do find as conclusions of law :

I. That the defendant James A. Cowing, the trustee, having purchased the property for the use and benefit of the holders of the bonds, secured by the mortgage of August 1, 1868, at the price or sum of $750,000, it was his manifest duty, under the trust contained in that mortgage, to proceed in the interest of all said bondholders to organize a new company or corporation for their benefit, and with said bondholders, and none others, as its members, and when formed and organized in the mode and manner prescribed by the terms of said trust, thereupon to reconvey, not sell, the premises so purchased to such new company or corporation.

II. That by virtue of the terms of the mortgage, upon the purchase by defendant Cowing at the foreclosure sale, as aforesaid, the right and title to the premises sold vested in him, and no bondholder had any claim to the premises or the proceeds thereof, except for his *pro rata* share of the proceeds of the same, as represented in a new company or corporation, to be formed for the use and benefit of the holders of the bonds secured by said mortgage.

III. That by the sale of January 2, 1872, and the deed thereupon to it made by said Cowing, the defendant, the New York Elevated Railroad Company, acquired a good and absolute title to the said premises as against the plaintiff and all other persons or parties, holders of said first mortgage bonds.

IV. That said defendant Cowing should have used the fund or property in his hands, as trustee, in the formation of a new company, as required by the terms of said mortgage ; and having failed so to do is chargeable with the value of said fund or property.

V. That under the admission of the answer and the receipt aforesaid, said Cowing is estopped to show that he did not receive the said sum of $734,518.84, .as specified in his said receipt, and he is therefore chargeable therewith in favor of the plaintiff.

VI. That the plaintiff is entitled to judgment against defendant Cowing for his proportionate share of said last-mentioned sum, to wit : The sum of $22,035.15, with interest from January 2, 1872, payment of said sum to be made out of the funds of the trust in his hands, and in default thereof by said defendant Cowing individually, and for his costs and disbursements of this action to be taxed by the clerk.

VII. That the defendant, The New York Elevated Railroad Company, is entitled to judgment against the plaintiff, dismissing the complaint, and for its costs and disbursements of this action, to be taxed by the clerk.

R. L. LARREMORE,<br>J. S. C.

## OPINION.

Plaintiff is the owner of forty-five first mortgage bonds, issued by the West Side Elevated Railroad Company, and secured by a mortgage executed by said company to George S. Coe and James H. Benedict, August 1, 1868. Said mortgage conveys to Coe and Benedict, their successors or assigns, the said railway, extending from Greenwich street near the Battery, in the city of New York, and along the same and the Ninth avenue to West Thirtieth street, and all property and lands then owned or to be acquired on the line of said road, together with the franchise thereof, in trust and as security for the payment of 1,500 bonds of $500 each, of which series of bonds those held by plaintiff were part.

Said mortgage provided that, in case of any judicial foreclosure sale, or other sale of the premises embraced therein, said trustees, their successors or assigns, should purchase said premises for the use and benefit of the holders of the then outstanding bonds, secured by said mortgage, upon the written request of a majority of the holders thereof; that upon such purchase the right and title to said premises should vest in said trustees, and no bondholder should have any claim to the premises or the proceeds

thereof, except for his *pro rata* share of the proceeds of said purchased premises as represented in a new company or corporation to be formed for the use and benefit of said bondholders. It was further provided in said mortgage that the trustees therein named, their successors or assigns, might take such lawful measures as they deemed for the interest of said bondholders to organize a new company or corporation for their benefit upon such terms, conditions and limitations, and in such manner as the holders of a majority of said outstanding bonds should in writing request, and to thereupon reconvey the premises so purchased to said new company or corporation.

Subsequently two judgments were recovered against said company for the sums of $214,405.93 and $3,230.04, respectively, upon which an execution sale was had April 22, 1871, of all the right, title and interest which said company had on January 24, 1871, or at any time thereafter in and to the said mortgaged premises. Such interest was purchased by Francis H. Tows for $5,000, and in pursuance of an assignment by him of such purchase to the defendant, the New York Elevated Railroad Company, said right, title and interest were duly conveyed to said last-named company.

On May 9, 1871, the said West Side Elevated (Patented) Railway, to secure its corporate obligation of that date to pay the sum of $213,949.08 on or before May 11, 1871, executed a certain other mortgage upon the premises heretofore described, and other premises, to wit : All and singular, the said railway, commencing near the Battery on Greenwich street and extending along the same and the Ninth avenue to Sixtieth street, and all property appertaining thereto.

By the terms of this mortgage, the trustee therein named was authorized to foreclose the same, in case of default in the payment of said corporate obligation ; Coe and Benedict resigned their trusteeship under the said mortgage of August 1, 1868, and on July 25, 1871, said James A. Cowing was appointed their successor, and accepted the trust created by said mortgage. Subsequently Cowing, as such trustee, foreclosed said mortgage, and a judicial sale was made of the premises therein described on October 5, 1871, and the same was purchased by said Cowing for the

sum of $750,000, who, on that day, received and accepted a deed thereof as trustee for the benefit of all the holders of the bonds secured by the mortgage thus foreclosed. By an order of the court made in said action of foreclosure, said trustee was directed to bid for said premises the sum of $750,000 for the benefit of said bondholders. Cowing, as shown by his receipt annexed to the report of sale in said · foreclosure, received the sum of $734,518.84 as the net proceeds of said sale.

The mortgage of May 9, 1871, was also foreclosed, and a sale made pursuant to its provisions, December 6, 1871, at which the New York Elevated Railroad became the purchaser, and received the deed of the premises described in said last mentioned mortgage for the consideration of $230,000.

On November 1, 1871, a circular was mailed by Cowing to said bondholders, stating the foreclosure proceedings and sale under the mortgage of August 1, 1868 ; that the title and possession of the property was in him as trustee, with power to hold and convey the same, and inviting suggestions as to the time and manner of selling the same. Plaintiff's testimony as to the non-receipt of this circular is purely of a negative character, and upon the whole proof he must be held to have received it in due course of mail.

Several of the parties (not including the plaintiff), holding a large majority of the bonds, united in a written request and authority to said trustee, dated November 13, 1871, to advertise and sell said road and property for cash at public auction, in trust for the bondholders. In pursuance of such request said road and property were thus advertised and sold January 2, 1872, to the defendant, the New York Elevated Railroad Company, for $100,000, and a conveyance thereof was duly made and recorded. Upon this named sum, as a basis, a cash dividend of $59.62 was declared upon each of said first mortgage bonds; several of the holders whereof purchased stock in the said New York Elevated Railroad Company, for which said bonds were received as part payment according to their dividend value. This privilege, as offered, was declined by plaintiff, who claims that the sale to said company was fraudulently and collusively made, and for an inadequate consideration, and he demands that the property conveyed

to said company may be adjudged to be held by it in trust for the benefit of plaintiff and subject to the lien of said mortgage, and that he have judgment against the defendants for the amount of his said bonds and interest by reason of their fraud and conspiracy and the violation of said trust.

The first question to be considered is that which relates to the rights and liabilities of the defendant, the New York Elevated Railroad Company.

The purchase by it of all the right, title and interest of the West Side Elevated Railway Company, and the conveyances thereunder upon the execution and mortgage sales of April 22, 1871, and December 6, 1871, have not been impeached.

The company defendant (the New York Elevated Railroad Company) thus acquired an absolute right of property in the northerly half of said road, from Thirtieth to Sixtieth street, and the equity of redemption of the southerly half thereof from Thirtieth street to the Battery, subject to the lien of the first mortgage bondholders, the ownership of said road by said company is full and complete. It is equally clear to my mind that, as between Cowing and the said company, the conveyance of January 2, 1872, was valid and passed a good title to the premises in question. Prior to said conveyance, the legal title was in Cowing under the foreclosure of the first mortgage which, by its terms, precluded the claim of any bondholder to said premises, or the proceeds thereof, except for his *pro rata* share of said proceeds as represented in a new company to be formed as therein directed.

The testimony is insufficient to warrant a finding of fraud or collusion on the part of the company defendant. The sale was at auction after due publication and for a valuable consideration, and no covin or concealment is shown to have existed. (*Franklin* v. *Osgood*, 14 John., 527; *Dillaye* v. *Commercial Bk.*, 51 N. Y., 345.) It was urged on the trial that the sale of property for $100,000, which originally costs $950,000, was of itself an *indicium* of fraud. If that fact stood alone, the good faith of the transaction might be seriously questioned ; but the witness (Harvey), who testified to so high an estimate of value, also admitted that about one-half of said amount was expended in stationary engines, endless chains, and experimental outlays which were of little value, as their use

was discontinued. After a review of the evidence, I am not prepared to hold that the price paid for the road was so grossly inadequate as to raise a presumption of fraud.

The next question for consideration is the validity and good faith of the sale as between Cowing and the bondholders.

As a trustee in receipt of compensation for his services, he was bound to exercise ordinary diligence in the management of the trust property. (*Litchfield* v. *White*, 7 N. Y., 438; *People* v. *Norton*, 9 id., 176.)

Though not responsible for loss while acting in good faith and without fraud, (*Thompson* v. *Brown*, 4 Johns. Ch., 619; *Brown* v. *Campbell*, Hopkin's Ch., 233; *Pierson* v *Thompson*, 1 Edw. Ch., 212), he is, nevertheless, personally liable for breach, or neglect of duty. (*Green* v. *Winter*, 1 Johns. Ch., 26; *Duffy* v. *Duncan*, 32 Barb., 587; Story's Equity, § 1284.)

The proceeds of the property sold was the primary fund for the payment of the bonds in question, and should have been so applied or used in the formation of a new company, as contemplated by the terms of the trust. No such company has been formed; the incorporation of the company defendant did not meet the requirements of the trust. The proposed company was unquestionably to be formed for the benefit of the bondholders, in which they should have a controlling interest, and not a company in which claims of an inferior class were placed on an equal footing with the first mortgage bonds.

Moreover, the plaintiff never assented, but refused to acknowledge the company defendant as the corporation contemplated by the trust deed. He, therefore, is not concluded by the sale and conveyance of January 2, 1872, of the corporate property for $100,000.

The trust deed did not authorize or contemplate such a sale, and in such a case it was indispensable that the trustee should have sought the aid and direction of the court. Without any pressing necessity he assumed a responsibility in direct violation of, because not authorized by the trust, and is therefore liable to make good the loss sustained. The trust property is now beyond reach, but its proceeds are yet available as shown by the pleadings and proofs.

The defendants in their answer state and admit that upon the foreclosure sale of October 5, 1871, "the bid of $750,000 mentioned in the eighth article of the complaint was duly made, and the same was duly paid, allowed and applied in pursuance of the judgment of sale and the terms of the mortgage."

The referee who made said sale reports the payment to Cowing as said trustee of $734,518.84, as the net proceeds thereof, and for which amount he gave a receipt. As against the plaintiff Cowing is bound by these admissions, and is estopped from showing any other or different transaction than that disclosed by the record. (*Van Dyke* v. *Maguire*, 57 N. Y., 429; *Robbins* v. *Codman*, 4 E. D. Smith, 315.) Judgment is therefore rendered in favor of the New York Elevated Railroad Company for a dismissal of the complaint and in favor of the plaintiff against the defendant Cowing individually, and as trustee for the *pro rata* share or dividend of the said sum of $734,518.84, upon the forty-five bonds now held by him, to wit: The sum of $22,035.15 and interest. That payment of said sum be made out of said trust funds, or in default thereof by said defendant Cowing individually.

(Signed),        R. L. LARREMORE.

The views expressed by the learned justice with regard to the liability of the defendant Cowing meet with our approbation. We regard them as a correct exposition of the law of this case applicable to him upon the facts stated which are supported by the evidence. In the mode selected in discharging his duty he did not perform the offices of his trust as he was required to do by the instrument conferring it, and seems to have lent himself to a scheme which was not originally contemplated and not justified in the trust deed. The new company to be organized in accordance with its provisions was, as suggested by the learned justice below, one for the benefit of the bondholders after the purchase by him, and to this new company the trustee was to convey and not sell the franchise. When he designed a conveyance to any other organization it became his duty to apply for leave to consummate such a transaction, and having omitted to do it necessarily assumed all the consequences of his act. These have been

visited upon him by the judgment declared, and he must bear the penalty.

In regard, however, to the defendants, the New York Elevated Railroad Company, we think the learned justice erred. It is clearly established that that company knew of the trust in detail. The originators of it were connected with the Westside Elevated Patent Railway Company, and some of the officers and a number of the directors of that company were interested in the company defendant, and the deed of transfer from the trustee recited the trust. The charge then of knowledge by the new company defendant cannot be denied, and whatever that knowledge imposed must be borne by it. It is a well-settled principle of law that a purchase, though for a valuable consideration from a trustee, with knowledge of the trust, carries with it all the obligations of the trust. (Tiffany & Bullard on Trusts, page 107; Perry on Trusts, §§ 217–328; *Wormly* v. *Wormly*, 8 Wheaton, 421; *Gautier* v. *Douglass Manuf. Co.*, 20 S. C. Rep. [13 Hun], 514.) The general doctrine is that wherever there is a misapplication of the assets, and they can be traced into hands affected with notice of such misapplication, a trust will attach upon the property or proceeds in such hands. (Tiffany & Bullard [*supra*], 198, and cases cited.) The defendants, the New York Elevated Railroad Company, having taken by purchase from the defendant Cowing, and in an unauthorized mode are to be considered as substituted trustees to the extent of the plaintiff's claim, and as holding the property acquired subject to his lien therefor. No other result can be justly eliminated from the doctrine thus stated, and the judgment in favor of the company defendant was an error which must be corrected. For these reasons the judgment entered herein must be affirmed as to the defendant Cowing, and reversed as to the defendant, the company; and as to the latter a new trial ordered, but without costs to either party of this appeal.

DAVIS, P. J., and INGALLS, J., concurred.

Judgment affirmed as to defendant Cowing, and reversed as to the Elevated Railroad Company; and as to the latter new trial ordered without costs of appeal to either party.